119 So.2d 217

**PHOENIX INSURANCE COMPANY OF NEW YORK**

v.

**Thomas F. LEONARD.**

**4 Div. 13.**

Supreme Court of Alabama.

March 24, 1960.

Edw. F. Reid, Andalusia, for appellant.

W. H. Baldwin, Andalusia, for appellee.

STAKELY, Justice.

Thomas F. Leonard (appellee) brought a suit at law in the Circuit Court of Covington County, claiming a sum of money upon a policy of insurance No. FAP 78932 issued by the defendant, the Phoenix Insurance Company of New York, a corporation (appellant), covering certain medical expenses incurred by reason of bodily injuries caused by being struck by an automobile while the policy was in force and effect of which the defendant had notice.

Demurrer was filed to the complaint which was overruled. The parties then pleaded in short by consent. The case was tried and a jury returned a verdict for the plaintiff in the amount of $1,535.35 with interest. Motion for new trial was overruled and this appeal followed.

Reversal is sought on a number of rulings by the court on the evidence.

■ I. The plaintiff offered in evidence the policy sued on. It covered a 1950 four door Cadillac No. M–1456291. This was objected to by the defendant on the ground of lack of identification. The objection was overruled by the court. We find no error here. A written policy of insurance, the foundation of a suit, is admissible in evidence unless the defendant files a sworn plea denying the execution of the policy. No such plea was filed. § 375, Title 7, Code of 1940; Life & Casualty Ins. Co. of Tennessee v. Peacock, 220 Ala. 104, 124 So. 229; Sovereign Camp, W.O.W. v. Gunn, 224 Ala. 444, 140 So. 410.

II. After the plaintiff offered in evidence the policy sued on, the plaintiff further testified substantially as follows: that he is the named insured in the policy and paid the premium thereon, that he was driving on a dirt road the automobile mentioned in the policy sued on, when the car hit a gully and he was thrown out when the door flew open and the rear wheel hit him in the back so that he could not move; that the plaintiff's cousin, Joe Redmon, who was with the plaintiff, got the plaintiff back into the car and drove him to Columbia General Hospital in Andalusia where plaintiff's mother was working and where plaintiff was treated by Dr. Ray Evers. Plaintiff further testified that he was in the hospital 48 days and the medical expense bill was the amount sued for in this suit, that he carried the bills to the defendant's attorney who told him that defendant would not pay the bills until the plaintiff was dismissed by the doctor. Plaintiff further testified that when he was dismissed he carried the medical bills to the attorney of the defendant, who said that he would send them in but no payments have been made.

On cross examination plaintiff testified that when he was dismissed from the hospital he went to another doctor in Pensacola because he had insurance with another company and they wanted him to see their doctor. Appellant asked what company that was. The answer was excluded. At this point the jury was excused and the attorney for the appellant informed the court that appellant was seeking to show other insurance companies to whom claims had been made, that some of these companies paid off but some did not. The court would not allow this testimony. The attorney for the appellant further stated that the defendant was seeking to show that there was no accident and that this suit was just to get insurance money.

The court then asked, "Is there a provision in the policy as to proration between the companies or that they are not liable if there is other insurance?" to which the

attorney for the defendant answered: "No, sir. There is no coinsurance or pro rata clause but we think it is material to the issue." The court then said, "In what respect?" and the attorney for the defendant replied, "In respect, we hope to show that there was no accident and that this was just to get insurance money and we think we are entitled to go into these other policies to show the extent of insurance in force at the time of this accident,— alleged accident." The court then said, "I can't let you do that. I mean I assumed that you were going to try to develop that the other people refused to pay on the grounds there was not an accident." The attorney for the defendant replied, "Some refused and some paid." The court then said, "That would be in effect getting testimony, whoever failed to pay it, without bringing them up here and putting them under oath." The attorney for the defendant replied, "All right, we won't show any failure to pay whether paid or not. We will simply show there was other evidence to go to the credibility of the witness." The court then said, "I can't let you go into that," to which the attorney then excepted.

■ It is insisted by the appellant in brief that evidence of prior or other claims against other insurance companies arising out of the same accident is admissible as showing motive, scheme, fraud or an attempt to deceive. We find no error here. It will be recalled that there was no clause in the policy prohibiting additional insurance and, therefore, recovery cannot be denied upon the ground of additional insurance. Appleman on Insurance Law and Practice, Vol. V, § 3052, p. 151. Further, after due consideration, we wish to approve the statement made by Judge McElroy on The Law of Evidence in Alabama, as set out on page 5, wherein it is said:

"The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues, or of misleading the jury, or (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

We think it is obvious from the record that the trial court was attempting to confine the testimony within the framework of the issues presented by the pleadings. When asked by the trial judge in what respect the evidence in question was material, the appellant did not offer to show a scheme to defraud, but offered the evidence to go to the credibility of the witness. It seems to us that the trial court correctly prevented such collateral matter from being injected into the record. In this connection there was expert testimony given by Dr. Ray Evers that he personally interviewed and treated the plaintiff at the hospital in Andalusia, that the plaintiff had suffered bodily injuries of a serious nature and had to be hospitalized for a period of time. It seems to us that in view of this testimony it can hardly be said that proof of other insurance would tend to show that there was no accident.

■ III. It is insisted that the trial court was in error in not permitting the attorney for the appellant to interrogate the appellee as to where the appellee got the money to pay his hospital bill. If the appellee had been forced to answer that he got the money to pay this bill through a loan, it seems to us that the evidence would have led the court to allow testimony which would have had no bearing on the issues in the case. For example, if the foregoing question had been allowed the appellee could have been interrogated as to the source of the loan, the security pledged for it and other immaterial matters.

The issues to be determined in the case were (1) Had the plaintiff sustained bodily injury caused by being struck by an automobile and if so (2) had he incurred necessary medical, surgical and X-ray and other

expenses by reason of this bodily injury and (3) what was the value of the reasonable expenses so incurred? It does not seem to us that the testimony as to where the appellee got the money to pay his hospital bill had any tendency to prove or disprove any of these material issues and accordingly was inadmissible. Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389; Southern Railway Co. v. Montgomery, 229 Ala. 456, 157 So. 854.

 IV. On cross examination, Joe Redmon, witness for the appellant, was asked, "Are you sure that Foster didn't get out of the car after stopping it at the point of this occurrence and roll on the ground and get dirt on him and then get back in the car and you drive him to the hospital?" to which the witness replied, "No, sir, that didn't happen." The witness was then asked, "Did you give an affidavit to that effect in Pensacola while you were in the Navy?" to which the witness answered, "No, sir." Objection was then made to the foregoing questions which the court sustained. It is sufficient to say that the witness had already answered the questions before the objection was made. There was no error here. Pettus v. Louisville & N. R. Co., 214 Ala. 187, 106 So. 807.

V. It is contended by the appellant that part of a conversation was shown by the appellee and that appellant was denied the right to show all of the conversation. The record does not support this contention. At the close of the appellant's examination of its witness Joe Redmon, the following took place:

"Q. (By Mr. Reid) You are presently stationed where in the Navy? A. At New Port, Rhode Island.

"Q. Did you at any time make demand on Foster Leonard for $300.00 out of this insurance money, any insurance money as a result of this accident? A. No, Sir.

"Q. That's all.

"Cross Examination.

"By Mr. Baldwin: Q. One question, Joe, say you are presently in the Navy? A. Yes, Sir.

"Q. Did Mr. Reid send you expense money to come to this trial? A. Yes, sir. he did.

"Q. That's all."

We do not understand the question asked by the appellee as opening up a new transaction and it certainly did not open up a conversation. We find no error here.

We have concluded that the judgment of the lower court is due to be affirmed.

Affirmed.

SIMPSON, GOODWYN and MERRILL, JJ., concur.