This is an appeal by Robert L. Whitmore and other plaintiffs from a judgment in their favor entered on four separate jury verdicts. We affirm.
The controversy arose out of a many-faceted multi-party construction project. It began with a tract of real estate owned by Tombo Corporation, one of whose principal stockholders was Tom Stinson. Tombo Corporation sold this tract of land to Alder Acres, Inc., a corporation (which later was dissolved and became Fitts and Rogers, Inc.). Alder Acres executed a mortgage on the property in favor of First City National Bank of Gadsden (which became First Alabama Bank). Tom Stinson was employed as a loan officer by that bank at the time this mortgage was executed, but at the time of the transaction in question he had become president of the First City National Bank of Oxford, Oxford, Alabama.
Sometime in April, 1975 Fred Fitts, a Gadsden developer and co-owner of Fitts and Rogers, Inc., approached Stinson concerning his project to construct a health spa. The spa was to be built on the tract of land described above and which Fitts and Rogers subsequently had sold to Regency Health Club, Inc. Fitts was also president of Regency.
On April 30, 1975 the First City National Bank of Oxford agreed to make a loan of $175,000.00 to Regency and its president for construction of the spa. The loan agreement between the bank and Regency provided, however, that the bank would not be obligated to advance more than $120,000.00 unless the bank were able to obtain the participation of some other financial institution for the balance of the loan amount. The loan was closed that day, with $100,000.00 being advanced to Regency. Of that sum $39,777.55 went to satisfy the earlier mortgage indebtedness on the property which was owned by First Alabama Bank. The further sum of $46,069.76 of the proceeds was used by Fitts to purchase a certificate of deposit which was assigned to the bank as security for pre-existing debts of Fitts and Rogers, Inc. Another $7,603.63 of the proceeds was used to pay off a bank loan on Fitts' automobile, and $922.75 of the proceeds was paid to the closing attorney. An additional $8,000.00 was advanced at a later date.
Sometime later Diversified Development Company, Inc. became interested in the construction of the spa. The evidence tends to show that Robert Whitmore, Vice-President of Diversified, contacted Fitts regarding Diversified's participation in building it, and Fitts asked for an estimate of costs, which Diversified originally estimated at $180,000.00. In June or July, 1975, Whitmore inquired of Stinson about the bank's loan to Fitts for the spa project. According to Stinson, he advised Whitmore to confer with Fitts regarding the details of the loan. Whitmore and Diversified's president, Julius Pate, however, maintained that Stinson represented to them that Fitts had a loan of $175,000.00 and that Diversified was financially safe in proceeding with the spa project. In any case, Fitts authorized Diversified to begin construction and it began on July 1, 1975.
On September 12, 1975 Pate and Whitmore visited the Oxford bank to obtain a first installment on the Regency loan. Ultimately they did receive a check in the amount of $23,864.00 payable to Regency and Diversified, but only after they had executed a promissory note for the amount of that check. They were also supplied with a like note for Fitts' signature. After Fitts executed his note to the bank in that amount, Whitmore and Pate were allowed to cancel their note in the same amount. At that time Stinson informed Pate and Whitmore that the bank would lend no more money for the spa project. Their later effort on or about October 1 to obtain additional bank funds was unsuccessful. *Page 519 
When Pate and Whitmore communicated with Fitts about this, according to them Fitts stated to them:
 He's [Stinson] going to have to get you the money. I paid him under the table to set this deal up for me and he's going to have to cooperate with us. I'll call him and we'll get your money.
Fitts denied making these statements.
At least one other meeting in Oxford was attended by all of these parties concerning the procurement of additional funds, and later they met in Gadsden seeking the participation of the First Alabama Bank. When these were not forthcoming, the construction project was halted. Pate, Whitmore and Diversified brought this action against First City National Bank of Oxford, Stinson, Fitts and The Regency Health Club, Inc. alleging breach of contract, conspiracy and fraud.
At the trial the court submitted the case to the jury on a count of contract between Diversified and Regency, and conspiracy and fraud against all defendants. The jury returned four separate verdicts. It found in favor of Diversified on its contract count and awarded $125,000.00 against Regency Health Club. It awarded $16,000.00 to Diversified against all defendants. Another verdict awarded $20,000.00 to Pate against Fitts and Regency. It also awarded Whitmore $20,000.00 against Fitts and Regency. In the aggregate the jury's verdict was $181,000.00. Thus each of the plaintiffs obtained a jury verdict, either on the theory of contract or upon the theories of fraud and conspiracy. The plaintiffs moved for a new trial, and when that was denied them this appeal ensued.
Basically, there are four issues presented for review: Whether the trial court erred in:
(1) excluding evidence of an August 20, 1974 payment from Fred Fitts to Tom Stinson and their alleged conversation regarding "under the table" payments;
(2) excluding evidence of the certificate of incorporation of Tombo Corporation and a deed from Tombo Corporation to Alder Acres;
(3) preparing the verdict forms submitted for the jury's use, and
(4) in refusing to allow the plaintiffs to amend their complaint and the pretrial order.
With regard to the first item, we have concluded that the trial court did not err in excluding evidence of the August, 1974 payment from Fitts to Stinson and the alleged statement of Fitts, by way of either direct or cross-examination. In reaching this conclusion we have not overlooked the nature of a conspiracy or the kind of evidence which may prove its existence. The conduct of the alleged conspirators during the progress of the conspiracy and its end result in themselves usually establish the ultimate fact of the conspiracy itself. It is for this reason that our court has approved the introduction of evidence before and after the date of the combination. Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251
(1953); O'Dell v. State, 270 Ala. 236, 117 So.2d 164 (1959). The proof, however, must tend to establish the ultimate fact,i.e., the conspiracy itself. Barber, supra. It is in that aspect that this evidence was inadmissible. When Fitts paid Stinson on August 20, 1974, neither the Regency Health Club, nor Pate nor Whitmore was even contemplated by Fitts or Stinson, for aught appearing. Fitts did not come forward with the proposal to build the spa until the following April. Stinson's connection with the property, as principal stockholder of Tombo Corporation, had long since been removed when the construction idea was advanced. It does not appear that the mere payment to Stinson was an act unlawful in itself, and therefore,
 where unlawful means are not used . . the object or purpose of the combination must be to cause damage to the plaintiff. . . . [W]hat is required is that the combiners should have acted in order that . . . the plaintiff should suffer damage. If they did not act in order that the plaintiff should suffer damage they are not liable,. . . . [Snyder v. Faget, 295 Ala. 197, 203, 326 So.2d 113 (1976), *Page 520 
quoting with approval from Winfield on Torts, Conspiracy 557, (8th ed. 1967)].
The reference to an "under the table" payment by Fitts to Stinson referred to that 1974 payment from Fitts to Stinson and thus was offered to prove a conspiracy to damage the plaintiffs. Under the circumstances it furnished no reasonable inference of a purpose to injure these plaintiffs at the time it was made. Indeed, the plaintiffs' argument seems to be that this payment represents a plan by Fitts and Stinson to have Diversified contract with Fitts to construct the spa, and then to have the venture fail with a resulting loss to Diversified (not to mention any loss to Fitts by reason of its failure). Without describing the evidence in detail, we have observed that the record contains evidence of extensive real estate transactions conducted by Fitts and Rogers prior to and at the time of the payment in question. Fitts testified, in fact, that this was a payment to Stinson for putting an earlier project together in which Stinson had made money for him. There was also evidence of many other debts owed by Fitts and Rogers to banks, other than to Stinson's employer, at the time of the payment in question. None of this evidence would help to qualify the earlier payment to Stinson as relevant evidence tending to prove a conspiracy between Fitts and Stinson at that time to harm Diversified, Pate or Whitmore. Its exclusion by the trial court, therefore, was proper. Phoenix Insurance Co.of New York v. Leonard, 270 Ala. 427, 119 So.2d 217 (1960).
What we have stated with reference to the 1974 transaction between Stinson and Fitts applies equally as well to the exclusion from evidence of the Tombo Corporation charter and the warranty deed from Tombo to Alder Acres, Inc. Our examination of the charter discloses a description of an ordinary commercial enterprise with numerous objects and purposes, including the powers to purchase and sell real estate, to enter into contracts, and to borrow money. The charter was dated August 31, 1970 and apparently was recorded contemporaneously. Stinson was not even the majority stockholder. The warranty deed from Tombo to Alder Acres was dated August 8, 1973, and was executed by Albert S. Klyce, III, president and principal stockholder of Tombo. Each of these documents substantially antedated the initial approach by Fitts to Stinson concerning the proposal to construct the spa and, of course, well before the plaintiffs' participation therein was contemplated. It was not error, therefore, for the trial judge to exclude this evidence. Cf. Independent Life AccidentInsurance Co. v. Maxwell, 53 Ala. App. 396, 301 So.2d 85, cert.den. 293 Ala. 759, 301 So.2d 93 (1974) (on remoteness and relevancy). On the trial court's power to limit cross-examination on irrelevant matters see Powell v. Powell,285 Ala. 230, 231 So.2d 103 (1970).
Next, the plaintiffs contend that the verdict forms submitted by the court to the jury were misleading and "tended to indicate" that the jury might have to find for one plaintiff and not the others. We cannot agree with that conclusion. The verdict forms submitted to the jury were the following:
 We, the jury, find in favor of the plaintiff, Robert L. Whitmore and against the following defendants 1 ____ 2 ____ 3 ____ 4 ____ and assess plaintiff's damages at $ . We further find in favor of the following defendants 1 ____ 2 ____ 3 ____. We, the jury, find for all the defendants and against the plaintiff, Robert L. Whitmore.
 We, the jury, find in favor of the plaintiff, Julius T. Pate, and against the following defendants 1 ____ 2 ____ 3 ____ 4 ____ and assess plaintiff's damages at $ . We further find in favor of the following defendants 1 ____ 2 ____ 3 ____.
 We, the jury, find for all defendants and against the plaintiff, Julius T. Pate.
 We, the jury, find in favor of the plaintiff, Diversified Development Corporation and against the following defendants 1 ____ 2 ____ 3 ____ 4 ____ and assess plaintiff's damages at $ . We *Page 521 
further find in favor of the following defendants 1 ____ 2 ____ 3 ____.
 We, the jury, find for all the defendants and against the plaintiff, Diversified Development Corporation.
 We, the jury, find in favor of the plaintiff, Diversified Development Corporation, and against the defendant, the Regency Health Club, Inc. and assess plaintiff's damages at $ on the contract.
 We, the jury, find for the defendant Regency Health Club, Inc. and against the plaintiff, Diversified Development Corporation on the contract.
 We, the jury, find for all defendants and against all of the plaintiffs.
As we have shown previously, this was a case of multiple plaintiffs proceeding against multiple defendants on three separate theories, contract, conspiracy and fraud. These verdict forms allowed the jury to find for all the defendants against all the plaintiffs, for all the plaintiffs against each of the defendants, either for or against Diversified on its contract with Regency, or for each of the plaintiffs against any or all of the defendants. The plaintiffs do not assert on appeal that the trial court committed any error in its oral charge pertaining to the respective liabilities of the defendants under the pleadings and proof, but only that the forms were misleading. The plaintiffs contend that the trial court should have submitted a general verdict form in favor of all plaintiffs against all defendants. However, such a finding was permissible under the forms, and in fact all plaintiffs were allowed a recovery. Indeed, the court charged the jury that it could find in favor of all the plaintiffs. The law does not require any particular form in which a verdict must be rendered so long as it responds substantially to the issues raised. "All else is form, which the court can supply with or without the consent of the jury." Wilson v. Federal Land Bankof New Orleans, 230 Ala. 75, 79, 159 So. 493 (1935); see alsoHall v. Defoor, 273 Ala. 597, 143 So.2d 449 (1962).
Finally, the plaintiffs contend that the trial court erred to reversal by refusing to allow on amendment to the plaintiffs' complaint and to the pre-trial order. The offered amendment was in the form of two additional counts, each of which asserted a conspiracy on the part of Fitts and Stinson to defraud the plaintiffs and based that conspiracy upon the same $20,000.00 payment made on August 20, 1974.
Rule 15 (a), ARCP provides inter alia:
 [A] party may amend his pleading without leave of court but subject to disallowance on the court's own motion or motion to strike of an adverse party; but such amendments shall be freely allowed when justice so requires. . . .
In McElrath v. Consolidated Pipe Supply Co., 351 So.2d 560
(Ala. 1977) this Court set forth the applicable Alabama law on liberality of amendments. While recognizing that a trial court has broad discretion in determining what "the interests of justice" require, we noted that the trial court must not exercise its discretion in an arbitrary manner. On this point we instructed that the interests of justice require that amendments be freely allowed unless the adverse party shows that he would be prejudiced by the amendment or there is evidence that the amendment could have been made before trial. In that case there was no proof of prejudice made by the adverse party, nor did we find any such proof from the record. In this case, however, as our discussion above has shown, the evidence which the plaintiffs sought to make admissible by this amendment is substantively insufficient. Further, unlikeMcElrath, supra, where the disallowed amendments presented issues not theretofore raised, here the plaintiffs presented amendments which not only presented matters theretofore raised but theretofore disposed of as improper. In Severson v. Fleck,148 F. Supp. 760 (D.N.D. 1957) reversed on other grounds,251 F.2d 920 (8th Cir. 1958), it was held that the motion to amend would be denied when the evidence under it would not be admissible to prove the proposed cause of action under any theory. See also, 6 Wright Miller, Federal Practice andProcedure: Civil, § 1487 (1971). Therefore it appears that *Page 522 
the adverse party in the instant action would be prejudiced by the allowance of such an amendment. Moreover, that there was adequate opportunity to present these amendments before the trial in this instance is also apparent. See Walker v.Traughber, 351 So.2d 917 (Ala.Civ.App. 1977). Hence the trial court did not abuse its discretion in denying the motion to amend.
In any case, we note that the original complaint averred:
 [T]hat the defendants have conspired to defraud your plaintiffs and have, . . defrauded your plaintiffs by encouraging them to perform work at said building with the intention that the plaintiffs not be paid for the work and labor done. That said defendants have conspired to foreclose said mortgage and prevent the plaintiffs from being able to collect any sums rightfully due them for work and labor by attaching said real estate. (emphasis added)
We note also that the extensive evidence appearing in the record shows that both parties fully litigated the issue of conspiracy. Furthermore, at the conclusion of the evidence, the trial court gave an extensive oral charge to the jury. That charge dealt with both fraud and conspiracy. Part of that charge was this:
 [A]n action based on a conspiracy to defraud may be maintained to recover for any damage suffered through acts of the conspirators. This would include a loss resulting from a conspiracy to misrepresent the financial condition of a corporation, and a loss suffered through a conspiracy to defraud by concealment.
Although the defendant bank objected to this charge on conspiracy, the plaintiffs did not object. The effect of the charge was to place the issue of conspiracy to defraud before the jury with the exception of a conspiracy based upon the $20,000.00 payment which we have shown was improper. It follows then that the issue of conspiracy was pleaded, argued and placed before the jury, and in view of the favorable general verdicts which the plaintiffs received, there has been no injury to the plaintiffs in denying the motion to amend. Rule 45, ARCP.
Accordingly, there being no reversible error, the judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.