638 P.2d 876

Clifford E. LINN, Plaintiff-Appellant,

v.

NORTH IDAHO DISTRICT MEDICAL SERVICE BUREAU, INC., an Idaho Corporation, Defendant-Respondent,

and

Oregon Physicians Service, a corporation, and Washington Physicians Service, a corporation, Defendants.

No. 12861.

Supreme Court of Idaho.

Dec. 17, 1981.

Charles H. Kimball, Coeur d'Alene, for plaintiff-appellant.

Reed Clements, Lewiston, for defendant-respondent.

ON REHEARING

BISTLINE, Justice.

I.

If John Linn, as he, his wife and two children entered their car for a drive on August 30, 1974, then entertained any premonition of impending disaster, he should have found some comfort in the fact that he had in effect not one, but two insurance policies which might take care of medical and hospital expenses incurred in treating all members of the family. One of these policies, commonly known as a comprehensive automobile policy, Linn had purchased from Farmers Insurance Company. That policy, in addition to other coverages, would pay for all medical and hospital expenses incurred, *within one year*, as a result of injuries suffered by him and his dependents in any accident involving his own automobile. (This coverage also extended to non-family passengers.) The other policy, a health and welfare group plan, otherwise known as THE NELSON TRUST, which policy itself Linn had never seen, was obtained for him by the company for which he worked and the union to which he belonged. All that Linn had received was a pamphlet purporting to synopsize the cover-

age of THE NELSON TRUST policy. By the pamphlet he was informed in Part I that medical-surgical-hospital benefits would be serviced by Blue Shield, which in Idaho would be by North Idaho District Medical Service Bureau (herein referred to simply as Medical Service Bureau, or MSB). Significant to what the head of a family of four would want to know, the pamphlet told him that MSB would pay up to $50.00 each for ambulance services, would pay for 180 days of his hospital confinement, 70 days of hospital confinement each for his wife and two children, 30 days of special nurses for himself, but nothing in that way for the wife and children. The pamphlet also informed him what surgery costs MSB would pay, including those of an anesthesiologist and diagnostic x-ray and laboratory services.

The pamphlet, under Limitations and Exclusions, listed 16 items, of which, significant to a breadwinner family man who or whose family members might experience an off-work accident, were on-the-job injuries, cosmetic surgery not required to restore body function, the cost of blood or blood plasma, appliances, braces, crutches, etc., and service benefits recoverable under Part A or Part B of Title XVIII of the 1965 Social Security Act. Specifically, the rather comprehensive list of uncovered items set forth *nothing* under LIMITATIONS AND EXCLUSIONS regarding Linn's being covered by other accident insurance.

Under a topical heading entitled DEFINITIONS, pp. 17–18 of the pamphlet, seven definitions were headnoted and explained, to-wit:

"Blue Shield Plans"
"Case"
"Organ Transplant Procedures"
"Medical Emergency"
"Member Physician"
"Hospital"
"Third Party Responsibility."

The "definition" of Third Party Responsibility provided only:

"If you or your dependent is injured and another party is at fault, the other party or his insurance company should pay your doctor and hospital bills. If you cannot recover enough to take care of your bills, you may apply the benefits of this contract toward the unpaid charges. The benefits of this contract for expenses resulting from accidental injury involving a private passenger motor vehicle shall be reduced to the extent such expenses are payable without regard to liability under any automobile insurance policy issued in the state of Oregon."

Linn, of course, did not live in Oregon, and the stipulated record with which we deal does not reveal what view he took of the foregoing "definition" of "Third Party Responsibility," assuming that he felt any need to read the paragraph—it not being set forth under LIMITATIONS AND EXCLUSIONS—where any attorney, insurance commissioner, or insurance salesman would agree that it should be. Linn, of course, was none of the above, but rather a worker in the lumber industry.

So, it would be speculative to the utmost to surmise what Linn thought of this paragraph, if he did indeed read it. The only reasonable reading is, however, that Linn was advised that if he or his dependents were injured by a third party at fault, the *third party or his insurance company should pay Linn's doctor and hospital bills.* That they *should* do so is at the least a moral truism with which no one should argue, but many are the Linns who know that negligent automobile drivers who injure innocent people—notwithstanding that they "should" pay the damages caused—do not have the resources with which to do so, and which lack of resources includes a lack of liability insurance.

Be that as it may, Clifford Linn should have entertained no concern that *he* would ever have to resort to pursuing a negligent third party in order to recover any expenses for doctor and hospital bills. After all, in the event that he and his dependents did get injured while traveling in their automobile, he had not just one—but two—insurance contracts which hopefully would not leave him exposed to paying out his own

funds with only the possibility that he might gain reimbursement from any negligent third party, who might or might not be (1) found at fault, (2) insolvent, and (3) uninsured.

Mr. Linn wisely purchased from Farmers a policy which gave him some small promise of compensation if he and his dependents received painful or crippling injuries at the hands of an uninsured negligent third party motorist.[1] For a premium he received a coverage under the Farmers policy which, in the event the foregoing did happen, promised to pay him up to a maximum of $10,000 damages for any general damages inflicted on him by the negligence of a third party uninsured motorist in any one accident. It promised to pay a like amount to any injured dependents, but not more than $20,000 for any one accident.

## II.

### THE STATE OF THE LAW AT THE TIME LINN ACQUIRED THE TWO POLICIES

If Linn had entertained any question as to the extent to which he could rely upon his two policies, the one with THE NELSON TRUST (as evidenced to him only by its pamphlet), and the other with Farmers, any informed attorney [2] would have advised him that, other than a company becoming insolvent, the only limitations of real consequence on his right to have his doctor and hospital bills paid by either or both was the one year time limit of the Farmers policy, and, of significance, the 180 day (for Linn) and 70 day (for his dependents) hospital payment maximum in the NELSON TRUST.

In a unanimous opinion authored by Justice Knudson, *Smith v. Idaho Hospital Service, Inc.*, 89 Idaho 499, 406 P.2d 696 (1965), this Court relied upon and quoted from a statement in an annotation at 81 A.L.R.2d 927, 936–37 (1962):

"'[S]ince hospital and medical care service plans are ordinarily organized so as to make such services available at a reasonable cost to persons who might otherwise be unable to bear the financial burden of illness, contracts issued by such plans typically provide that *coverage will not be extended when the subscriber's or member's medical expenses are payable from some source other than the subscriber's own resources.*'" *Id.* at 504, 406 P.2d at 699 (emphasis added).

Key to Linn's situation, of course, are those words emphasized above: "payable from some source other than the subscriber's own resources." A person's own insurance policy is, of course, one of his own resources. The insured has paid for it; it is his.

The Court in 1965 understood, as the annotation states, that hospital and medical care plans ordinarily have the salutary purpose of making certain that there will be such coverage, and also that it will not be extended to the medical payments payable from some other source (other than the resources of the subscriber or member). The Court in *Smith* specifically set forth the annotation's further statement that hospital and medical plans commonly contained "'provisions *limiting* or *excluding* coverage where the injury or illness and attendant medical expense are covered by workmen's compensation . . . .'" *Id.* (Emphasis added.)

Here, of course, any person examining the pamphlet of THE NELSON TRUST would see under LIMITATIONS AND EXCLUSIONS, that the only situations in which medical and hospital services might possibly not be covered by reason of being paid from another source would be those in which the service was a benefit recoverable under provisions of the 1965 Social Security Act. Nothing in this provision in the least

---

1. The NELSON TRUST pamphlet informed Linn that it would pay an indemnity for disabling injuries only if there was a dismemberment of hand or foot, or loss of sight in an eye.

2. As stated in *Smith v. Idaho Hospital Service, Inc.*, 89 Idaho 499, 503, 406 P.2d 696, 698 (1965): "It is well settled that contracts of this nature are governed by the statutory and decisional law in force at the time the contract is entered into and the law becomes part of it."

intimated that Linn was excluded from or limited in receiving payment of medical and hospital expenses to the extent that he could also receive such payments from his Farmers policy, truly a resource of his own.

Three years after the *Smith* decision, in *Medical-Dental Service, Inc. v. Boroo*, 92 Idaho 328, 442 P.2d 738 (1968), the Idaho Supreme Court held that the group service plan was not liable "when such exclusion *is clearly presented* . . . ." *Id.* at 331, 442 P.2d at 741. Linn's NELSON TRUST pamphlet, however, unlike the foregoing language, contained *no* indication of any exclusion or limitation relating to any privately purchased policy providing medical and hospital expense coverage.[3]

## III.

## THE ACCIDENT OF AUGUST 30, 1974, AND PROCEEDINGS IN DISTRICT COURT

As misfortune would have it, the Linn vehicle was hit by another motorist, and all of the Linns were hospitalized for their injuries, of which the most serious were to Mrs. Linn and the daughter, as reflected in their doctor and hospital bills submitted to MSB of $4,875.25 and $3,557.77, respectively. Linn himself submitted total bills of only $450.85, and the son's bills were $917.60.

The total of bills submitted to MSB, $9,801.47, was not all of the bills, but only those which Linn contended were chargeable to MSB under his NELSON TRUST policy. His total bills were considerably above those submitted, but as pointed out above, the pamphlet explaining his NELSON TRUST contract did contain certain limitations, especially on hospital and cosmetic surgery expenses. Pursuant to his medical payments policy with Farmers Insurance, Linn received $14,898.52 from that company.

After MSB refused to pay the bill submitted, Linn brought suit, alleging his entitlement to $9,801.47 that he had demanded but which remained unpaid, and asking for judgment in that amount and for attorney fees under I.C. § 41–1839.

MSB in answering the complaint by way of affirmative defense brought in the additional facts that the Linns had been injured in a two-car collision occasioned by the negligence of one John Giovanelli, an uninsured motorist, and that Linn and his dependents

"received full payment of all medical expenses in addition to the sum of Twenty Thousand Dollars ($20,000) paid by way of uninsured motorist protection benefits from Farmers Insurance Group, plaintiff's insurance carrier, under the terms of his policy with said company which constituted the maximum benefits payable for medical and uninsured motorist protection; that all bills sought to be recovered in plaintiff's Complaint were and have been included in the settlement of plaintiff's claim under his policy with Farmers Insurance Group and were paid to plaintiff by said company."

Thereafter the complaint was amended to correct an error in the caption and to correct the amount sued for from $9,801.47 to $9,738.67.

The case was submitted to the trial court on a stipulation of facts which included a copy of the master NELSON TRUST policy and the pamphlet above referred to. It was a stipulated fact that "individual employees covered by the master policy, including the plaintiff, were not furnished a copy of the master policy," but also that the pamphlets were furnished to the unions involved for distribution to the employees, "which booklets summarized the provisions of the master policy."

Further stipulated were the facts of the accident, of the injuries to Linn and his

---

**3.** In the *Boroo* case, Mr. Boroo had not purchased and did not have among his assets another policy which in any event *contractually* entitled him to payment of any medical and hospital expenses arising out of injury in any automobile-related accident. Additionally, the

*Boroo* case did not involve a situation where, as here, Linn received only a pamphlet telling him of his coverage. The *Boroo* policy contained a specific exclusion as to OTHER INSURANCE BENEFITS, and it was boldly so captioned.

dependents, and of the bills for medical, surgical and hospital services. It was agreed that the bills were, to the extent of $9,738.67, an obligation of MSB, if MSB were liable at all.

Relative to MSB's defense it was a stipulated fact that:

"7. Subsequent to the accident plaintiff made claim upon his insurance carrier, Farmers Insurance Company, under plaintiff's policy with said carrier, a copy of which is hereunto attached, marked 'Exhibit B', and by reference made a part hereof as though specifically set forth herein, for medical expenses and for benefits of the uninsured motorist provisions of such policy; that plaintiff has received from Farmers Insurance Company, under the provisions of Exhibit B, the maximum uninsured motorist benefit of Twenty Thousand Dollars ($20,000) and, in addition, has received payment of $14,-898.52 for medical expenses incurred by plaintiff and plaintiff's family, which are included in plaintiff's claim against MSB."

Reaching the basis of MSB's denial of coverage and its defense of the lawsuit, the stipulation further recited:

"8. MSB has denied plaintiff's claim of Nine Thousand Seven Hundred Thirty Eight and 67/100 Dollars ($9,738.67), as hereinbefore set forth, basing its denial on the exclusions appearing in the master policy (Exhibit A), particularly the exclusion which provides:

" 'The benefits of this contract for sickness or injury resulting from the negligent or wrongful act or omission of another party shall be reduced by the amount of funds reasonably recoverable by or on behalf of the subscriber or dependent from or on account of such other party. "Funds reasonably recoverable" include but are not limited to all money obtained from or on account of such other party as a result of claim or litigation for the recovery of special damages, general damages or punitive damages or in consideration of any release, receipt, covenant not to sue, acquittance or agreement of any kind, written or oral . . .'."

Regarding the pamphlets, a final recitation of the stipulation was that Linn acknowledged receipt of those dated February 1, 1969, and November 1, 1973. Others were dated March 1, 1979, and February 1, 1972. Copies of all four of the pamphlets were stipulated into evidence, but it was stipulated that the one dated November 1, 1973 (from which excerpts above were taken), was referenced to the master policy effective on the date the Linns were injured. It was agreed that a paragraph found on the frontpiece of the pamphlet contained a statement that it was furnished "for the purpose of giving a brief and clear summary of the benefits available to you under the plan," but which also went on to provide that if any question arose concerning benefits payable, "the group insurance contracts issued by the insurance carrier and the medical-surgical-hospital service organization underwriting the benefits of the plan shall control."

As counsel for Linn and for MSB saw the issues, and stated them in their stipulation, the court was asked to decide (1) whether the pamphlets superseded, modified, or otherwise abrogated the terms of the master policy, and (2) whether the exclusion of the master policy precluded Linn from recovering from MSB in view of payments received by him from Farmers.

## IV.

### THE TRIAL COURT DECISION

The trial court's memorandum decision first directed that the findings of fact would include, in addition to those facts stipulated to, the fact that the pamphlet of November 1, 1973, contained the paragraph referred to earlier and quoted above.[4]

---

4. For convenience, of the reader, the paragraph is repeated:

"If you or your dependent is injured and another party is at fault, the other party or his insurance company should pay your doc-

As to the statements of the pamphlet and the provisions of the master policy, the court reasoned:

> "[F]or the booklet to control the provisions of the master policy there would have to be a direct conflict between the booklet and the policy, or at the very least a misleading statement that is not unclear or ambiguous."

The court theorized that if the booklet provisions were ambiguous, the paragraph found in the frontpiece, page 1, clearly instructed the insured to refer to the master contract (concerning which more will be said later in this opinion). The court, however, concluded that the pertinent provisions of the booklet were not unclear or ambiguous, and its statement to that effect became a written conclusion of law. To that conclusion was added the further statement: "If any ambiguity had existed, the same would have been resolved by the master contract . . . which specifically controls . . . ."

As to the second issue, the trial court reasoned as follows:

> "[T]he third party responsibility paragraph in the master policy quoted in finding of fact number 8 clearly reduced the benefits under the master policy, by reducing such benefits 'by the amount of funds reasonably recoverable by or on behalf of the subscriber or dependent *from or on account of such other party*'. The phrase 'or on account of' in this instance would be synonymous with the words 'because of', and certainly the uninsured motorist clause in the Farmers Insurance Policy obligated Farmers Insurance
>
> > " 'To pay all sums which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured caused by accident, . . .'

tor and hospital bills. If you cannot recover enough to take care of your bills, you may apply the benefits of this contract toward the unpaid charges. The benefits of this contract for expenses resulting from accidental injury

Plaintiff received such sums under the uninsured motorist clause because of the negligent, wrongful act or omission of such uninsured motorist.

> "Further, the definition of funds 'reasonably recoverable' for the foregoing reasons would also include an uninsured motorist policy payment.
>
> "Damages for bodily injury under the Farmers Insurance Policy would also include special damages, such as hospital and medical expenses and the identical matters covered by the MSB master policy."

MSB's critical contention is simply that the payment of the medical bills by Farmers Insurance in this case was solely and only prompted by the negligence of the third party and the corresponding contractual obligation of Farmers Insurance to respond because of or on account of such negligence. MSB contends that such was the precise situation in *Boroo*.

MSB is incorrect in the two foregoing premises. First, as to Farmers' payments of the doctor and hospital bills of the four injured Linns, the record, more clearly than the stipulation, evidences beyond dispute that the bills were paid because of a contractual obligation arising not out of Linn's uninsured motorist coverage *but under his medical payments coverage*. Second, as to *Boroo*, such was *not* the factual situation there. Boroo had only uninsured motorist coverage in his own automobile insurance policy; unlike Mr. Linn, he did not have medical payments coverage.

## V.

## THE FARMERS POLICY MEDICAL PROVISIONS

A critical issue, as succinctly stated in MSB's brief, is MSB's contention that Farmers paid the Linn doctor and hospital bills because of the negligence of Giovanelli. Such is simply not so, and therein the case is also unlike *Boroo*.

involving a private passenger motor vehicle shall be reduced to the extent such expenses are payable without regard to liability under any automobile insurance policy issued in the state of Oregon."

Farmers Insurance, which is not an eleemosynary institution, for a premium charged and received, was contractually obligated to pay Linn, within a time limitation of one year, the amount of *all* of the bills which were incurred in treating the four injured Linns. It is that simple. Even if Giovanelli had not been at fault, Farmers would have been obligated to pay. If Linn had rolled the car in a one-car accident, Farmers had to pay. Giovanelli's negligence had nothing to do with Farmers' obligation to pay the bills incurred in treating the Linns.

Linn's policy with Farmers gave him no less contractual right to receive medical and hospital payments than had it been a document embodying just that coverage, and nothing else. That it contained additional coverage which he, as with most people, purchased in obtaining liability insurance, is of no moment.

The parties may have inadvertently misled the trial court by their choice of language in stipulated fact no. 7. Therein they advised the trial court that "plaintiff has received from Farmers Insurance Company ... the maximum uninsured insurance motorist benefit of Twenty Thousand Dollars ($20,000) and, in addition, has received payment of $14,898.52 for medical expenses ...." As is readily seen that statement is not at all specific that Linn's policy with Farmers Insurance included Coverage D, medical payments, and, as *a wholly separate coverage*, Coverage C, the uninsured motorist provisions. The stipulation is subject to being viewed as reciting that *all* of Linn's payments from Farmers were made under the uninsured motorist provision.

That the trial court so envisioned the language of the stipulation is rather conclusively evidenced by his determination that all sums received by Linn were paid "under the uninsured motorist clause"—which simply was not the fact, and *could not* have been the fact when the Farmers Insurance policy was carefully worded to provide, and

clearly did provide, that while it would pay up to a $20,000 maximum under the uninsured motorist provision, it would *not* also pay under that provision any of Linn's doctor and hospital expenses which were recoverable under the separate medical payment coverage.

In actuality, then, it is seen that the parties did not clearly and unambiguously stipulate that the $14,898.52 was paid under Linn's medical payment coverage with Farmers. The stipulation, closely read, is not even specific that Linn *had* medical payments coverage under that policy.[5] Rather, as we readily observe, the stipulation made no mention of the Farmers policy medical payments coverage or provisions, but did specifically mention the *uninsured motorist provisions.*

Accepting that the court was thus not made aware of the Farmers Insurance medical payments coverage, the reasoning of the court appears to have been undoubtedly predicated upon *Boroo,* the court stating:

> "[T]he uninsured motorist clause in the Farmers Insurance Policy obligated Farmers Insurance
>
> > 'To pay all sums which the owner or operator of an uninsured motor vehicle would be legally responsible to pay as damages to the insured because of bodily injury sustained by the insured caused by accident, ...'
>
> Plaintiff received such sums under the uninsured motorist clause because of the negligent, wrongful act or omission of such uninsured motorist.
>
> "Further, the definition of funds 'reasonably recoverable' for the foregoing reasons would also include an uninsured motorist policy payment.
>
> "*Damages for bodily injury* under the Farmers Insurance Policy *would also include special damages, such as hospital and medical expenses* and the identical matters covered by the MSB master policy." (Emphasis added.)

---

5. No. 7 of the stipulation states that Linn made claim under his Farmers Insurance Policy "for medical expenses and for benefits of the uninsured motorist provisions."

In *Boroo* this Court noted: "The uninsured motorist clause obligated Farmers to pay appellants 'all damages' legally due them from an uninsured motorist 'because of bodily injury sustained' in an accident with the uninsured motorist." 92 Idaho at 329, 442 P.2d at 739.

The similarity in language used by the Supreme Court in *Boroo* and the trial court in *Linn,* both speaking of the uninsured motorist coverage as a "clause" rather than a "provision," or simply as "coverage," makes it easy to accept that the trial court was indeed guided by *Boroo,* and that it was not made aware of the medical payments coverage of Linn's policy with Farmers, or that the uninsured motorist coverage contained a limitation stating that Farmers would not pay under the uninsured motorist provision any of the damages which Linn would recover under provision D—captioned "Family Medical Expense." [6]

In addition to the language of the stipulation having the capability of misleading the trial court, the affirmative defense pleaded by MSB surely would have done so, and, at the same time, would have encouraged a misunderstanding of what the parties were attempting to lay before the court. That affirmative defense, which MSB did not reincorporate into a later filed answer, but the provisions of which quite obviously went into the stipulation, stated as follows:

6. The uninsured motorist provision of the Farmers policy, Coverage C subsection (d), states:

"The Company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured motor vehicle which represents expenses for medical services paid or payable under Coverages D or E of the policy."

The *Boroo* court closely examined five cases which had been cited in argument on that appeal, which would be of extreme importance to any legal mind advising Linn whether he could or could not recover on both of his policies. Keeping in mind that in *Boroo,* Boroo did *not* have a comprehensive policy such as Linn's and, particularly that Boroo had no medical payments coverage, but only the uninsured motorist coverage, an examination of one or two of those authorities mentioned in *Boroo* is both illustrative and helpful.

"[T]hat subsequent to the accident aforementioned, plaintiff and members of plaintiff's family received full payment of all medical expenses in addition to the sum of Twenty Thousand Dollars ($20,-000) paid by way of uninsured motorist protection benefits from Farmers Insurance Group . . . ."

The MSB master policy, with which Linn was not furnished, nor any copy thereof, may have intended that MSB's obligation to Linn be reduced by those amounts which were paid to him or his dependents for doctor and hospital bills, by any negligent third party. Accepting, arguendo, that the master policy so provides, it is still beyond dispute that Giovanelli, the negligent third party, did not make any payment whatever of the Linn doctor and hospital bills. Nor were any payments made on behalf of Giovanelli. It is thus inescapable that MSB is not entitled to the reduction provided for in the master policy. Linn's own resources, to-wit, his own funds, which purchased his Farmers Insurance policy, were the source of funds used to pay his doctor and hospital bills. Such were indisputably "the subscriber's own resources," and, unless this Court were to retract the well considered opinion issued in *Smith v. Idaho Hospital Service, Inc.,* 89 Idaho 499, 406 P.2d 696 (1965) wherein that quoted language is found, MSB is not—still accepting arguendo that

In both *Hack v. Great American Insurance Co.,* 175 So.2d 594, 596 (Fla.Dist.Ct.App.1965), and *Sims v. Nat'l Casualty Co.,* 171 So.2d 399, 400 (Fla.Dist.Ct.App.1965), the Florida court recognized that "the medical expense coverage represented a contract provision of the policy, the premium for which had been paid by the injured plaintiff." *In both cases it was held that such amounted to an independent policy,* and payment receivable thereunder was entirely contractual, hence separate and apart from what might be obtained as damages from an uninsured motorist, or on account of or because of the uninsured motorist.

The Florida court's decisions are directly in line with the statement of this Court in *Smith v. Idaho Hospital Service, Inc., supra,* in which it was recognized that there is a distinction to be drawn between the "subscriber's own resources" and "some other source"—ordinarily the independent third party tortfeasor.

the undisclosed master policy takes precedence over the distributed pamphlet—entitled to any credit whatever for the Farmers Insurance payments which Linn garnered *only* because he paid his money and purchased that coverage.

## VI.

## THE QUESTION OF DOUBLE RECOVERY

It has been suggested that if Linn prevails against MSB he has effected a "double recovery." Double recovery, however, is ordinarily a term used in the context of tort actions, in which the rule is that a plaintiff proceeding to judgment against several defendants cannot collect his judgment from all of them, but is held to one satisfaction of his judgment. But contractual relationships are different. A man may have more than one policy insuring against the loss of his life. That his widow collects on all of the policies is not a "double recovery," but rather payment made pursuant to a contractual obligation incurred for a premium paid. Similarly, it has been held that there is no legal or policy reason why an insured should not be allowed to contract with insurance companies for double or multiple medical coverage. *See, e.g., Phoenix Insurance Co. of New York v. Leonard,* 270 Ala. 427, 119 So.2d 217 (1960); *Hensley v. Farm Bureau Mutual Insurance Co.,* 243 Ark. 408, 420 S.W.2d 76 (1967); *Heis v. Allstate Insurance Co.,* 248 Or. 636, 436 P.2d 550 (Or. 1968); *Batchelor v. American Health Insurance Co.,* 234 S.C. 103, 107 S.E.2d 36 (1959); *National Educators Life Insurance Co. v. Morgan,* 295 S.W.2d 713 (Tex.Civ.App.1956); *Ciokewicz v. Lynn Mutual Fire Insurance Co.,* 212 Wis. 44, 248 N.W. 778 (1933). As stated in *Heis v. Allstate Insurance Co., supra,* 436 P.2d at 552:

"[T]here is no public policy which dictates a single insurance recovery for medical payments. A person may bargain with as many insurance companies as he pleases for the payment of medical expenses incurred by him. This does not result in any unfairness to the multiple insurers. Each insurer receives a premium which we may assume is computed upon the basis that the insurer alone will be obligated to pay the medical expenses of the insured and not simply the excess or a pro rata proportion of the expense with other insurers. As we have already noted, if it were the intention to so limit liability it is reasonable to assume that the insurer would have included an excess or pro rata clause in the section of its policy on medical expense coverage."

Any other result would put an undue burden on the insured to carefully check all the complexities of any policies he may have to ensure that he is not throwing his money away on wasted double coverage.

Moreover, whether the insured pays the premium or negotiates the coverage is also irrelevant. As stated in *Lecker v. General American Life Insurance Co.,* 55 Haw. 624, 525 P.2d 1114, 1118 (1974):

"Although in *Riske* [*Riske v. National Casualty Co.,* 268 Wis. 199, 67 N.W.2d 385 (1954)], the insured had herself actually contributed toward the payment of the premium, we do not regard this feature as of any consequence. Whether in this case the premium was paid by the employer or by someone else, it would seem to us that consideration moved from the insured. It was not a gift from the employer, but rather bargained for compensation."

The NELSON TRUST insurance policy was part of the compensation Linn received for his employment. We see no reason to treat this policy any differently than a policy he might have directly purchased for himself.

Further, the fact that MSB is a medical service corporation does not alter this conclusion. While it is true that the purpose of these heavily-regulated corporations is to provide minimum standards of health care to as widely dispersed a segment of society as possible, and that they are non-profit, nonetheless the same basic principles of insurance law apply to service corporations as to any other insurance company. The issue in this case as it is in all cases in which the insurance company claims an exclusion, is whether there exists in fact such an exclusion against the claim of the insured.

 Finally, we note that since the facts were stipulated, we are reviewing only the trial court's conclusions of law. As such, we are not bound to defer to those conclusions. *See Harding v. Home Investment & Saving Co.*, 49 Idaho 64, 286 P. 920 (1930); *Scott v. Keever*, 212 Kan. 719, 512 P.2d 346 (1973); *Rist v. Westhoma Oil Co.*, 385 P.2d 791 (Okl.1963).

## VII.

### THE BOOKLET AND THE MASTER POLICY

A critical issue in this case is the legal effect of the booklets which purported to synopsize the coverage of the NELSON TRUST policy. As stated earlier, MSB argues, and the trial court agreed, that the booklets clearly provided that benefits under the policy for expenses resulting from accidental injury involving a private motor vehicle were to be reduced to the extent such expenses were payable under any automobile insurance policy, and, that the master policy controlled in the event of an ambiguous provision in the booklet.

This Court dealt with a conflict between a master policy and an explanatory handbook in *Lewis v. Continental Life & Accident Co.*, 93 Idaho 348, 461 P.2d 243 (1969). In that case, the appellant, who was disabled, was covered by a group life insurance policy issued to his employer. The group master policy required yearly proof of an employee's disability as a condition for the extension of coverage to a disabled employee. The handbook, which the insurance company distributed to explain the insurance policy and to induce employees to subscribe to it, required only that the employee submit proof of his disability. After noting that proof of disability provisions may readily be waived, this Court held that the insurance company waived the provisions of the master policy which were directly contrary to its representation in the pamphlet:

"This handbook explained coverage under the program in clear, informal and easily read English. It was expected that employees would read and rely upon this booklet. And the company did or at least should have known that if an employee wished to determine what his coverage was he would turn to this pamphlet before the hard to decipher certificate of insurance or the master policy.... Under these conditions it would be inequitable for the respondent to have sold insurance based on a statement of this simple, less onerous duty and then to enforce a stricter provision later on. We hold, therefore, that respondent waived the provisions which were directly contrary to its representations in the pamphlet ...." 93 Idaho at 354–55, 461 P.2d at 249–50.

The court in *Lecker v. General American Life Insurance Co.*, 55 Haw. 624, 525 P.2d 1114 (1974), was also confronted with the issue of "the legal effect of the provisions contained in the booklet-certificate which ostensibly granted to the beneficiary a greater insurance coverage with respect to accidental death benefits than ... the printed policy of group insurance ...." *Id.* 525 P.2d at 1115. The court, citing *Lewis v. Continental Life & Accident Co., supra*, held as follows:

"Because the booklet-certificate in describing the plan of insurance to each insured expressly states that benefits are subject to the applicable terms, conditions and limitations in the policy, the defendant claims that all employees covered by the group policy are put on notice that they must consult both of these documents, the booklet-certificate and the policy, to determine the full extent of their coverage. However, the defendant did not issue and deliver the master policy to the insured employees, other than to the policyholder. There was no explicit direction to the insured contained in the booklet-certificate that each insured should read the policy by obtaining it from the policyholder. All that the insured received from the defendant was a copy of the booklet-certificate. Under these circumstances, we think that the insured is entitled to rely on the booklet-certificate, which HRS § 431–518 requires the insurer to furnish to an insured

so that the insured may be informed of the essential features of his insurance coverage. The defendant, having misinformed the insured of the limitations affecting such coverage, through use of the booklet-certificate is, therefore, estopped from asserting a policy exclusion not shown or otherwise indicated in the booklet-certificate as a basis for nonpayment of accidental death benefits. A contrary view would render nugatory the effectiveness of HRS § 431–518, insofar as it requires that the individual certificate contain a summary of the essential features of the insurance coverage. . . .

"From any reasonable point of view, the impact of the omission from the certificate prepared by the insurer and relied upon by the insured of an important condition or limitation which would effect insurance coverage would be just as misleading and deceiving to the insured as where positive statements in such certificate vary from those contained in the policy. We would not, therefore, treat these two situations differently by not applying to the former a principle which is applicable to the latter. It seems to us to be the better view, and which we adopt, that a significant policy exclusion which is not specified in the individual certificate should not be enforced. *Bauer v. Insurance Company of North America,* supra [351 F.Supp. 873 (E.D.Wis.1972)]; *Lewis v. Continental Life & Accident Co.,* 93 Idaho 348, 461 P.2d 243 (1969); *Riske v. National Casualty Co., supra* [268 Wis. 199, 67 N.W.2d 385 (1954)]." 525 P.2d at 1118–19.

*See also e.g., Sahlin v. American Casualty Co.,* 103 Ariz. 57, 436 P.2d 606 (Ariz.1966); *Bass v. John Hancock Mutual Life Insurance Co.,* 10 Cal.3d 792, 112 Cal.Rptr. 195, 518 P.2d 1147 (Cal.1974); *Riske v. National Casualty Co.,* 268 Wis. 199, 67 N.W.2d 385 (1954); Anno, 36 A.L.R.3d 541 (1971).

*Lecker* is practically foursquare with this case and we agree with the reasoning set forth therein. All that Linn received was a copy of the booklet, which itself advised him that it described the coverages provided in general terms. The disclaimer language—to the effect that the master policy itself would control in the event any question arose as to benefits payable—cannot be said to have required Linn to demand a copy of the policy in order to compare it against the booklet in order to search out ambiguities between the two in regard to a claim which had not arisen. He was certainly not given an explicit directive to read a policy with which he had not been furnished. Under these circumstances, Linn was entitled to rely on the booklet. If the booklet misinformed him as to the benefits or exclusions of his coverage, MSB is estopped from asserting an exclusion appearing only in the master contract. This conclusion is buttressed by I.C. § 41–2203 and I.C. § 41–3417. Section 41–2203, which under I.C. § 41–2211 applies to policies such as the present one, provides that each group disability insurance policy shall contain a provision "that the insurer will furnish to the policy holder for delivery to each employee or member of the insured group, a statement in summary form of the essential features of the insurance coverage of such employee or member and to whom benefits thereunder are payable." Similarly, § 41–3417(5) provides that service corporations can issue contracts to groups under a master contract, but in that event "each subscriber covered under the master contract shall be issued an individual certificate which shall set forth in adequate detail the provisions itemized in subsection (2) above." Among the provisions itemized in subsection (2) are the following:

"(2) Each such subscriber's contract or certificate shall in adequate detail set forth provisions from which can be readily determined:

"(a) The services to which the subscriber is entitled from participant licensees and/or participant hospitals, as the case may be;

. . . .

"(e) All other terms and conditions of the agreement between the parties consistent with the provisions of this chapter; . . ."

To effectuate the purposes of these statutes, the insured must be entitled to rely upon the booklet with which he is furnished. MSB cannot in its compliance with the statutory requirements at the same time render that compliance nugatory by inserting a disclaimer which has the effect of settling a controversy as to coverage in its favor by declaring contrary policy provisions paramount over the statements of coverage set forth in the issued booklet.

The question then becomes whether the provision of the booklet in the present case clearly provided that benefits under the MSB policy for expenses resulting from accidental injury involving a private motor vehicle were to be reduced to the extent such expenses were payable under *any* automobile insurance policy. In answering this question, it must be remembered that all ambiguities in insurance policies are to be resolved in favor of the insured, *Dunford v. United of Omaha*, 95 Idaho 282, 506 P.2d 1355 (1973), and that "[w]here language may be given two meanings, one of which permits recovery and the other does not, it is to be given the construction most favorable to the insured." *Erikson v. Nationwide Mutual Insurance Co.*, 97 Idaho 288, 292, 543 P.2d 841, 845 (1975).

The disputed third-party responsibility clause in the booklet in question is composed of three sentences. The first sentence clearly states that if Linn or his dependents are injured and a third party is at fault, that other party *or his insurance company* should pay the doctor and hospital bills. This sentence is not restricted to situations in which injuries are caused in vehicle collisions, but could include cases in which a child is injured at a cross walk or while playing in a neighbor's yard, and a variety of situations. The second sentence of the clause, however, purports to deal with situations in which the insured cannot recover enough to take care of his bills. Taken in context with the preceding sentence, this sentence rather apparently is aimed at a recovery which has been made from any third party or his insurance company for expenses arising as a result of the negligence of any third party. These first two sentences pose no problem in this case. The third sentence of the clause, however, provides that benefits under the MSB policy arising out of vehicular collision shall be reduced to the extent such expenses are payable without regard to liability under an automobile insurance policy issued in the state of Oregon. Oregon has adopted no-fault automobile insurance.

A reasonable reading of the third-party responsibility clause in its entirety would be that benefits under the NELSON TRUST, arising out of injuries suffered at the hands of another driver, are to be reduced by amounts recoverable from third parties or their insurance carriers, or by amounts recoverable under the Oregon compulsory no-fault plan without regard to liability. While I.C. § 41–2502 requires that all automobile insurance policies delivered or issued for delivery in Idaho contain uninsured motorist coverage such as Linn had under his Farmer's policy, the authors of the NELSON TRUST policy did not choose to deal with other insurance provisions beyond the no-fault scheme in Oregon. If they had desired to expand the third party responsibility exclusion, they had ample opportunity to do so since the booklets were prepared and issued twice since 1970 when MSB joined in servicing the master policy for employees situated in Idaho.

Moreover, if the authors of the booklet had desired to include some other insurance provision to cover all other insurance policies, they could easily have done so. Such a provision was clearly set forth in the policy in *Medical-Dental Service, Inc. v. Boroo*, 92 Idaho 328, 442 P.2d 738 (1968). That policy provided as follows:

"If a subscriber is entitled to benefits under *any other insurance agreement*, specifically including but not limited to automobile insurance, school insurance, or liability policy coverage, for expenses and services provided for in this certificate, then the benefits afforded hereunder for such services and expenses shall be over and above such other benefits." 92 Idaho at 329, 442 P.2d at 739 (emphasis added).

The drafters of the MSB policy involved in this case chose not to place such a clear provision in the booklet furnished Linn. Instead, they apparently chose to limit the extent of the exclusion. Anyone with an insurance policy issued outside of Oregon could reasonably believe that if he provided for the same coverage regardless of liability under another policy, he could have a full recovery under both policies.[7]

At the least, the provision furnished Linn is ambiguous, and it is not the function of the courts to remake insurance transactions in a manner the insurance company may have intended; it is the duty of the courts to construe language as written, with all ambiguities being resolved against the insurer.

The booklet furnished Linn did not inform him that any medical claims under his MSB policy were to be reduced by payments he might receive from another insurance policy *he carried*. Since he was not informed of this exclusion, MSB is estopped from relying on it, *Lewis v. Continental Life & Accident Co., supra*, and Linn is entitled to recover his medical expenses under his policy with MSB.

The judgment of the district court is reversed with directions to enter a judgment as of the same date for Linn, including interest and attorney's fees both in the district court and on this appeal.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, J., concurs in the judgment of the Court other than Part V in which he does not concur.

BAKES, Chief Justice, concurring specially:

I agree with the majority that benefits paid pursuant to the coverage under Part III, Coverage D, for family medical expense would not be "benefits of this contract for sickness or injury resulting from the negligent or wrongful act or omission of another party ..." within the meaning of the Nelson Trust policy. Thus, our earlier case of *Medical-Dental Service, Inc. v. Boroo*, 92 Idaho 328, 442 P.2d 738 (1968), which analyzed a recovery under an uninsured motorist clause, rather than a medical expense clause, would not be applicable. However, paragraph 7 of the stipulation of facts *ante* at 880, entered into between the parties is susceptible of being construed to mean that the payment was made pursuant to the uninsured motorist coverage, rather than the medical coverage provision. However, the policy, which by stipulation was admitted into evidence after the trial, indicates that in all probability the medical expenses paid to the Linns were in fact paid under the medical expense clause rather than the

7. The "other insurance" clause in the master policy also demonstrates that the authors of this policy apparently were not concerned with providing against the same recovery under all other insurance policies:

"*Part VI—Coordination of Benefits*
"A. The following definitions shall apply to this Part VI:
1. 'Plan' means any insurance policy or prepaid medical plan or program for which any employer contributes or makes payroll deductions.
2. 'Covered Expense' means the reasonable cost of any physician, hospital, nursing, ambulance or related services or supplies toward which benefits are payable under this contract or any other plan.
"B. If in any calendar year a subscriber or dependent is entitled to payment under another plan for services or supplies also covered by this contract, benefits payable hereunder for such calendar year will be reduced to

the extent required in order that the aggregate of benefits payable under all plans shall not exceed the total covered expenses incurred during such calendar year by the subscriber or dependent. If a plan furnishes benefits in the form of services rather than cash payments, the reasonable value of each service rendered shall be considered a covered expense."
The only other mention of additional coverage is as follows:
"*Part XII—Additional Coverage*
"If the same service is a benefit of this contract and also a benefit of an individual contract of one of the Plans, payment hereunder on account of that service shall be limited to the amount by which its reasonable cost exceeds the amount paid toward its cost under all other contracts of the Plans."
No general provision against double and medical coverage appears anywhere in the policy.

uninsured motorist clause of the contract. The trial court found, based upon the stipulated record, that the "Plaintiff received such sums under the uninsured motorist clause because of the negligent, wrongful act or omission of such uninsured motorist," and thus concluded that the master policy issued to the Nelson Trust required the amounts owing to the Linns under that policy to be reduced "by the amount of funds reasonably recoverable by or on behalf of the subscriber or dependent from or on account of such other party."

Rather than reversing and remanding with directions to enter judgment for the plaintiff, as the majority has done, I would merely reverse and remand to the trial court to resolve the apparent conflict in the stipulated record as to whether or not the medical expenses were paid pursuant to the uninsured motorist clause (Part II, Coverage C), or pursuant to the medical expense clause (Part III, Coverage D). If it is under the latter, then the plaintiffs are entitled to recover under their policy with the Nelson Trust. If it is under the former, then the judgment of the trial court should be affirmed.