
DA 11-0393

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 73

VALERIE SCHEAFER, individually
and on behalf of all others similarly
situated,

        Plaintiff and Appellant,

   v.

SAFECO INSURANCE COMPANY
OF ILLINOIS, and any and all
parent companies, subsidiaries, and
affiliates, and John Doe Defendants 1-50,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 09-1110C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Hillary P. Carls, Mark J. Luebeck; Angel, Coil & Bartlett;
Bozeman, Montana

     For Appellee:

          Carey E. Matovich, Brooke B. Murphy; Matovich, Keller & Murphy,
P.C.; Billings, Montana

                    Submitted on Briefs:  January 29, 2014
                           Decided:  March 18, 2014

Filed:

_____
                      Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 This is the second appeal in this case. The appeals arise out of a November 7, 2007 automobile accident and ensuing insurance coverage disputes.

¶2 At the time of the accident, Valerie Scheafer was driving a business vehicle owned by Mattress King, Inc. and insured by Mountain West Farm Bureau. Scheafer alleges that as a result of the accident, she incurred medical expenses and other losses. Scheafer, whose personal vehicles were insured by Safeco at the time, filed a claim with Safeco for medical payment benefits (Med Pay). Safeco paid Scheafer Med Pay benefits and Mountain West paid to her an undisclosed amount of underinsured motorist (UIM) benefits.[1] In November 2009, Scheafer, believing Safeco wrongfully refused to pay additional claimed benefits, brought a class action suit against her insurer in the Eighteenth Judicial District Court. Safeco moved to dismiss the complaint, and in June 2011 the District Court granted the motion. Scheafer appealed to this Court.

¶3 In March 2012, we remanded the matter to the District Court with specific instructions pertaining to supplementation of the record and additional analysis by the District Court. The District Court issued its order following remand in August 2013, ruling in favor of Safeco. Scheafer appeals this order. We affirm.

---

[1] There is virtually no information in the record before us about the accident. We are not even told whether this was a one-vehicle or two-vehicle accident. We presume two vehicles were involved and that the second vehicle was liable for and paid damages arising from the accident because Scheafer has made a claim for UIM benefits and Safeco's brief in the first appeal states it "has not asserted a right to recover any amount from either the tortfeasor or the primary UIM insurer." Furthermore, Scheafer does not disclose the amount of damages she claims to have sustained, or the amount she has recovered from the tortfeasor's policy or the Mountain West UIM policy.

**ISSUE**

¶4    A restatement of the issue on appeal is whether the "other insurance" clauses in Scheafer's automobile liability policy are valid, and whether they violate the "made whole" doctrine as *de facto* subrogation.

**FACTUAL AND PROCEDURAL BACKGROUND**

*First Appeal:*

¶5    Scheafer was injured in an automobile accident on November 7, 2007. At the time of the accident, Scheafer, whose three personal vehicles were insured by Safeco, was driving a vehicle insured by Mountain West Farm Bureau. In August 2008, Scheafer submitted a notice of the accident to Safeco in which she specifically requested Med Pay benefits. She claimed that her then-current medical expenses exceeded $22,600. While Scheafer's Safeco policy provided both Med Pay and UIM coverage and Scheafer paid separate premiums for each, Scheafer's notice letter made no request for UIM benefits nor did it state any monetary damages related to UIM.

¶6    Scheafer later claimed that Safeco refused to pay Med Pay or UIM benefits. Safeco countered that it had paid her $1,000 which was the limit of her Med Pay coverage. Safeco acknowledged that after learning she was not driving one of her Safeco-insured vehicles, it advised her that it would not pay any UIM claim until the limits of Mountain West's UIM coverage were exhausted. Safeco explained to Scheafer that her policy contained "other insurance" clauses which provided that Safeco's Med

Pay and UIM coverage were "excess"[2] to any other similar coverage available under other applicable insurance policies—in this case, that of Mountain West.

¶7 On November 23, 2009, Scheafer filed suit against Safeco on her own behalf and on behalf of other similarly situated Safeco insureds. In her class action complaint, Scheafer claimed she had "incurred reasonable and necessary medical expenses and other damages and losses, which were causally related to the accident." The complaint did not reference the amount of medical expenses Scheafer had incurred nor did it identify the type or amount of "other damages and losses" for which she was seeking benefits. Additionally, the complaint did not indicate whether Mountain West, or any other insurer, had paid benefits to Scheafer and, if so, the amount and nature of such benefits.

¶8 In Scheafer's complaint, she alleged that by requiring other Med Pay and UIM coverage to be exhausted before triggering Safeco's duty to pay benefits, Safeco engaged in unlawful subrogation that effectively reduced the amount of coverage available to her and all Safeco insureds under their applicable policies. In her complaint, she asserted that Safeco: (1) breached its contract; (2) violated the Unfair Trade Practices Act, §§ 33-18-101–1006, MCA; (3) committed constructive fraud; and (4) breached the implied covenant of good faith and fair dealing. Among other things, she sought the certification of her putative class and a declaration that the "other insurance" clauses in

---

[2] An excess clause is "[a]n insurance-policy provision—usu. contained in the 'other insurance' section of the policy—that limits the insurer's liability to the amount exceeding other available coverage. This clause essentially requires other insurers to pay first." *Black's Law Dictionary* 584 (Bryan A. Garner ed., 7th ed., West 1999). Excess clauses are designed to prevent an insured from receiving a double recovery or windfall. *Nat'l. Cas. Co. v. American Bankers Ins. Co.*, 2001 MT 28, ¶ 16, 304 Mont. 163, 19 P.3d 223.

4

Safeco's policies violated public policy and were void and/or unconstitutional because they constituted subrogation. She also sought punitive damages. Scheafer further asserted that the "other insurance" clauses violated her right to be made whole.

¶9 In December 2009, Safeco moved to have Scheafer's action dismissed under M. R. Civ. P. 12(b)(6) (Rule 12(b)(6)) for failure to state a claim upon which relief may be granted. Safeco argued that the "other insurance" clauses were valid, enforceable, and did not constitute subrogation, and that Scheafer misinterpreted well-established Montana law. It asserted that Scheafer would not be entitled to the relief she seeks under any set of facts she could prove.

¶10 In its June 2011 order, the District Court noted that the "other insurance" clauses in Safeco's policy constituted "excess" clauses and are generally considered valid and enforceable. It acknowledged, however, that we have not previously discussed the enforceability of an excess clause in the context of both Med Pay and UIM coverage. After citing numerous cases in which we ruled excess insurance clauses were enforceable, the District Court concluded that the clauses in this case were valid and enforceable.

¶11 The court next addressed whether the "other insurance" clauses constituted subrogation. It determined that they did not amount to subrogation because the "excess" clause did not reduce the amount of coverage available to Safeco's insureds; rather, the clause merely established a priority system by requiring that any other applicable policy be exhausted before Safeco's coverage was triggered. Thus, if Scheafer's damages

5

exceed the amount of coverage available under the primary policy issued by Mountain West and she has not been made whole, then Safeco's benefits, up to the policy limits, are available to her. Having determined that the excess coverage clauses in Safeco's policy were valid, enforceable, did not amount to subrogation, and did not violate Scheafer's right to be made whole, the District Court granted Safeco's Rule 12(b)(6) motion. Scheafer appealed.

¶12 We determined on appeal that the District Court record was insufficient to support its ruling in that the record did not contain either insurance policy at issue in the case. Furthermore, we observed there was nothing in the record to resolve the dispute as to whether Safeco had paid her Med Pay claim. Noting that we have historically treated Med Pay coverage differently from UIM coverage,[3] we remanded the matter to the District Court for supplementation of the record and additional analysis concerning the distinction between Med Pay and UIM coverages in the context of "other insurance" clauses. We also instructed the District Court to determine the priority of the "other insurance" clauses contained in the two policies.

*Second Appeal:*

¶13 Following additional proceedings, the District Court issued its supplemental order on August 1, 2013, and the matter has returned to us on appeal, once again by Scheafer. The record has been supplemented with a copy of each insurance policy and the parties have stipulated that on August 27, 2008, Safeco paid Scheafer the total $1,000 Med Pay

---

[3] *Allstate Ins. Co. v. Reitler*, 192 Mont. 351, 355-56, 628 P.2d 667, 670 (1981); *Farmers Ins. Exch. v. Christenson*, 211 Mont. 250, 254-55, 683 P.2d 1319, 1322 (1984).

benefits to which she was entitled under her policies. Additionally, the District Court conducted the requested analysis pertaining to Med Pay and UIM coverage. The court again concluded the "other insurance" clauses contained in Safeco's policy were valid, enforceable, and did not constitute unlawful subrogation. The court further held that under the facts of the case, Mountain West's coverage was primary and Safeco's coverage was excess. Scheafer appeals.

## STANDARD OF REVIEW

¶14 We review a district court's ruling on a motion to dismiss under the standards set forth in Rule 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. When considering a motion to dismiss under Rule 12(b)(6), all well-pled allegations and facts in the complaint are admitted and taken as true, and the complaint is construed in a light most favorable to the plaintiff. A district court's determination that a complaint has failed to state a claim for which relief can be granted is a conclusion of law which we review for correctness. *Sinclair v. Burlington Northern & Santa Fe Ry.*, 2008 MT 424, ¶ 25, 347 Mont. 395, 200 P.3d 46 (citation omitted).

## DISCUSSION

¶15 *The issue on appeal is whether the "other insurance" clauses in Scheafer's automobile liability policy are valid, and whether they violate the "made whole" doctrine as* de facto *subrogation.*

¶16 Scheafer's claim on appeal is that the "other insurance" clauses contained in Safeco's policy violate Montana's subrogation law and are therefore void and

unenforceable. Scheafer asserts her right to be made whole is critical to this analysis. She cites numerous cases that stand for an injured insured's right to be made whole before an insurer may seek subrogation. *Skauge v. Mountain States Tel. & Tel. Co.*, 172 Mont. 521, 528, 565 P.2d 628, 632 (1977); *Zacher v. American Ins. Co.*, 243 Mont. 226, 794 P.2d 335 (1990); *Youngblood v. American States Ins. Co.*, 262 Mont. 391, 866 P.2d 203 (1993).

¶17    Subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Black's Law Dictionary* at 1440. As explained in *Skauge*, 172 Mont. at 524, 565 P.2d at 630, "Subrogation is a device of equity which is designed to compel the ultimate payment of a debt by the one who in justice, equity and good conscience should pay it." Additionally, we have held that it is "the public policy in Montana that an insured must be totally reimbursed for all losses as well as costs, including attorney fees, involved in recovering those losses before the insurer can exercise any right of subrogation, regardless of any contract language providing to the contrary." *Swanson v. Hartford Inc. Co.*, 2002 MT 81, ¶ 28, 309 Mont. 269, 46 P.3d 584.

¶18    Scheafer's Safeco policy contained three "other insurance" clauses but the two clauses relevant to this case are contained in Scheafer's Med Pay and UIM coverage. The clause pertaining to Med Pay states:

> If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other

applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

Additionally, the Safeco policy "includes medical payments coverage with limits of $1,000 per person."

¶19    The clause pertaining to UIM provides:

> If there is other applicable insurance similar to the insurance provided under this Part of this policy, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle:
> 1. You do not own, including any vehicle while used as temporary substitute for **your covered auto**; or
> 2. Owned by you or any **family member** which is not insured for this coverage under this policy;
>
> Shall be excess over any other collectible insurance similar to the insurance provided under this Part of the policy. [Emphasis in original.]

The policy carried a $25,000 per person limit on underinsured bodily injury coverage regardless of the number of vehicles on the policy. Notably, this is not a "stacking" case in that Safeco's policy expressly provides that for each Med Pay and UIM coverage, Safeco charges "one premium . . . regardless of the number of vehicles" listed on an insured's policy.

¶20    The Mountain West policy also included an "other insurance" provision which provides:

> a.    For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .

9

The Mountain West policy contained a Med Pay limit of $5,000/person and a UIM limit of $50,000/person/$100,000/accident.[4] Because at the time of the accident Scheafer was driving a vehicle owned by Mattress King, Inc. and insured by Mountain West, Safeco argued that the Mountain West policy was primary, and its policy was excess. Moreover, Safeco asserted in its post-remand briefing to the District Court that it was its "understanding that Mountain West Farm Bureau has acted as primary insurer . . . and paid Scheafer's medical expenses accordingly. . . ." This again highlights a void in the record in this case—Scheafer has failed to disclose the amount, nature, and source of insurance proceeds she has received in conjunction with this accident, whether from the tortfeasor's insurer or from Mountain West. Without this information, we are unable to evaluate whether she has in actuality been made whole, or whether she has been denied any benefits to which she was entitled under either policy.

¶21 Scheafer asserts that "other insurance" clauses govern the relationship between insurers, but do not affect the right of the insured to recover under each concurrent policy. She claims that these clauses adversely affected her right to recover under both policies, and they therefore constituted unlawful subrogation. She further argues that she must be made whole before Safeco can deny coverage based upon its claimed status as an "excess" carrier. She maintains that the District Court erroneously determined that the clauses did not constitute subrogation and that Mountain West's policy provided primary coverage with her Safeco policy providing excess.

---

[4] It appears possible that Mountain West's Med Pay coverage may have been stacked, thereby providing potential Med Pay coverage of $40,000 ($5,000 x 8 insured vehicles).

¶22 Arguing Montana's subrogation law and public policy are at the center of this dispute, Scheafer focuses much of her brief on the "made whole" doctrine, asserting the requirement in Montana that an injured party must be made whole before an insurer may assert its right of subrogation. She claims that Montana's made whole doctrine will be rendered meaningless if we determine that these "other insurance" clauses are not subrogation clauses. She submits that "Montana law provides that there are no 'other insurance' priority of payment rights among concurrent insurance policies, when the claim implicates the Montana public policy set forth in [*Reitler*], and/or an insured's made whole rights." Scheafer maintains that Safeco's "other insurance" clauses operate to reduce the total amount of benefits available to its insureds and therefore constitute *de facto* subrogation clauses.

¶23 Scheafer argues that *Blue Cross & Blue Shield of Mont., Inc. v. Mont. State Auditor*, 2009 MT 318, 352 Mont. 423, 218 P.3d 475, among other cases, supports her argument that Safeco's "other insurance" clauses constitute subrogation. In *Blue Cross & Blue Shield*, BCBS asked the insurance commissioner to approve insurance forms that contained exclusion language stating that BCBS "would not pay for health care costs of its injured beneficiaries if the beneficiaries received, or were entitled to receive, benefits from any automobile or premises liability policy." *Blue Cross & Blue Shield*, ¶ 5. After initially accepting the exclusion language, the commissioner subsequently disapproved the exclusion clauses and the district court affirmed the commissioner's ruling. After an administrative and a district court hearing, we determined the exclusion clauses:

effectively allow [BCBS] to exercise subrogation before paying anything to its insured, contrary to § 33-30-1101, MCA, which allows reimbursement "for benefits paid." The exclusions allow BCBS to avoid any payment of benefits to its insured if the insured is "entitled to receive" benefits from any other auto or premises liability policy, whether or not the insured actually receives any of those benefits, and whether or not the insured has been made whole. Only when the insured is made whole as defined in Montana law, and then only after BCBS has paid out benefits to its insured, could BCBS be entitled to claim subrogation. It is contrary to Montana law for BCBS to enjoy the benefits of subrogation in the circumstances allowed by the disputed exclusions.

*Blue Cross & Blue Shield*, ¶ 19.

¶24 Safeco counters that *Blue Cross & Blue Shield* is readily distinguishable from the case before us, in that the language of the BCBS policy allowed the insurer to avoid payment altogether in the event the insured received, or was "entitled to receive" benefits from any other automobile policy. By contrast, Safeco would be obligated to pay benefits to its insured in the event the benefits available under the primary insurance policy were insufficient to cover the damages claimed by the insured. It maintains it has a contractual right to invoke the "other insurance" clauses in its policy to determine the priority of payment when more than one policy provides coverage for the same loss. Citing several cases, it asserts that "[t]his Court has consistently upheld these types of clauses in the context of UIM, liability, and property damage/collision coverage, acknowledging that these clauses serve the valuable purpose of preventing an insured from recovering multiple times for the same loss." *See e.g. Bill Atkin Volkswagen v. McClafferty*, 213 Mont. 99, 689 P.2d 1237 (1984); *P.C. Rental, Inc. v. Chase Manhattan Bank*, 2000 MT 106, 299 Mont. 315, 998 P.2d 1168.

12

¶25 Acknowledging that this Court has historically treated Med Pay subrogation differently from UIM subrogation,[5] Safeco maintains that the distinction drawn in those cases is inapplicable here because this is not a subrogation case. Safeco further asserts that because Mountain West was the insurer of the involved vehicle, Mountain West was responsible for primary payment of damages and losses. Consequently, under the plain language of its policy, Safeco was the excess or secondary insurer, and would be available to pay benefits only after Mountain West had paid full benefits under the component coverages of its policy. Safeco thus insists that this is not a subrogation/made whole case. We agree.

¶26 In *Blue Cross & Blue Shield*, as detailed above, BCBS was seeking to avoid making payments if the insured was covered by any other insurance policy covering the same type of damages or injuries. Had the other insurer failed to pay benefits, BCBS could still have denied benefits under its exclusion clause. In the case before us, Safeco is not trying to eliminate its obligation to Scheafer, it is merely requiring that the involved vehicle's insurer first pay what it is obligated to pay, and Safeco will pay the excess, if any, within its policy limits. Because the language and effect of the BCBS and Safeco policies is significantly different, reliance on *Blue Cross & Blue Shield* by Scheafer is misplaced.

¶27 Scheafer's reliance on *Reitler* and *Christenson* for the proposition that unlawful subrogation is occurring here is similarly misplaced. In *Reitler*, Allstate made payments

---

[5] *See Reitler* and *Christenson* (full cites at footnote 3 of this Opinion).

13

under its medical payments coverage to its insured Welton following an accident that was not her fault. It then sought to subrogate to the extent of those medical payments against the liability insurer for the tortfeasor Reitler. We held that because the insured had paid a premium for the medical payments coverage and that she would be likely to suffer if the medical payments she received must then be repaid out of her third-party recovery, the medical payment subrogation clauses at issue were invalid. We further observed that the tortfeasor's carrier could conceivably conclude that because the injured person has already been paid medical expenses, it could make a smaller offer than it would otherwise be required to make. *Reitler*, 192 Mont. at 356, 628 P.2d at 670. Subsequently, in *Christenson*, we held that our holding in *Reitler* declaring a subrogation clause invalid was limited to the medical payment coverage situation. *Christenson*, 211 Mont. at 255, 683 P.2d at 1322.

¶28 We agree with Safeco that *Reitler* and *Christenson* have no application here. In *Reitler*, Allstate's attempted subrogation could have conceivably depleted the available liability policy limits carried by the tortfeasor, thus resulting in a reduced recovery by the injured party. Here, Safeco has attempted no subrogation, nor has it refused Scheafer's claim for either Med Pay coverage or UIM coverage. Rather, it paid Scheafer's Med Pay claim and assumed a backup position to the UIM benefits available under the Mountain West policy. In short, this is not a subrogation case. This being so, we need make no distinction between the Med Pay and UIM excess coverages.

14

¶29 Significantly, Scheafer does not argue that her damages and losses exceed the benefits that were available under the Mountain West policy, nor does she provide any evidence to establish that she has not been "made whole." In fact, she asserts that she "is not alleging her losses exceed the limits" of the UIM coverage in Mountain West's policy. This concession, when combined with the absence of any information about the amount of her UIM claim or the amount of benefits paid by Mountain West or any other insurer, leaves us to speculate as to the basis of her present claim. At a minimum, the concession draws into question her assertion that Safeco is somehow obligated to pay additional UIM benefits. While we are unable to make any informed determination of whether Scheafer's damages entitled her to additional benefits, we can say—premised on the facts before us—that the "other insurance" clauses in Scheafer's automobile policy are valid, and that, as applied here, do not constitute *de facto* subrogation.

## CONCLUSION

¶30 For the foregoing reasons, we affirm the District Court's ruling granting Safeco's motion to dismiss Scheafer's claim.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE

15