

DA 13-0548

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 168

JEFFREY G. WINTER,

      Plaintiff and Appellant,

  v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV-12-0185
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Roland B. Durocher; Hartelius, Durocher & Winter, PC; Great Falls,
Montana

      For Appellee:

            Robert F. James, Cathy J. Lewis; Ugrin, Alexander, Zadick & Higgins,
PC; Great Falls, Montana

                        Submitted on Briefs:  May 21, 2014
                                Decided:  July 1, 2014

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Jeffrey Winter (Winter) appeals the order of the Eighth Judicial District Court, Cascade County, denying his motion for summary judgment and granting summary judgment to State Farm Automobile Insurance (State Farm). The District Court determined that State Farm was not required to pay Winter's medical expenses pursuant to his automobile medical payments (med pay) coverage that were previously paid by Winter's health insurer. We reverse, and address the following issues on appeal:

¶2 *1. Did the District Court err by granting summary judgment to State Farm after concluding that Winter had not "incurred" any medical expenses?*

¶3 *2. If the District Court erred by not granting summary judgment to Winter, is Winter entitled to costs, interest, and attorney fees?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On October 20, 2011, Winter injured his left knee when he stepped into his truck while working on it. His injury required medical care, including surgery, resulting in total medical expenses of $7,929.83. At the time of the injury, Winter was insured by an automobile insurance policy issued by State Farm. The truck was a specifically named insured vehicle for this policy. The State Farm policy provided med pay coverage up to $15,000. Winter also had health insurance coverage through Blue Cross and Blue Shield (BCBS) under a separately purchased policy. Winter's premium for the BCBS insurance was $8,808 for the year.

2

¶5     Winter's medical bills were originally submitted to his BCBS health insurance, which paid nearly all the expenses.  On February 15, 2012, Winter notified State Farm of his claim for benefits pursuant to his med pay coverage.  State Farm paid only the $25.02 that was unpaid at that time, refusing to pay further benefits on the ground that no expenses were left unpaid.  Winter filed suit against State Farm, alleging breach of the insurance contract for its failure to pay the entirety of his medical expenses, and alleging unfair trade practices.

¶6     The State Farm policy for the coverage at issue states that State Farm will pay:

> *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident.

(Emphasis in original to indicate defined terms.)  The policy also includes nonduplication and exclusion provisions.  The nonduplication provisions explain that State Farm will not pay any medical expenses under med pay coverage that have already been paid:

> 1. as damages under Liability Coverage, Uninsured Motor Vehicle Coverage, or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
> 2. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

(Emphasis in original.)  The fourteen exclusion provisions are all directed toward what activities will preclude coverage except one which provides:

> THERE IS NO COVERAGE FOR AN *INSURED*:
>
> .   .   .
>
> 2. TO THE EXTENT ANY WORKERS' COMPENSATION LAW OR BENEFITS OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*.

3

(Caps and emphasis in original.) Finally, the policy includes provisions applicable to when "Other Medical Payments Coverage or Similar Vehicle Insurance Applies." This section dictates that:

1. An ***insured*** shall not recover for the same ***medical expenses*** or funeral expenses under both this coverage and other medical payments coverage or similar vehicle insurance.[1]

2. The Medical Payments Coverage provided by this policy applies as primary coverage for an ***insured*** who sustains ***bodily injury*** while ***occupying your car*** or a ***trailer*** attached to it.
   If medical payments coverage or other similar vehicle insurance provided by one or more sources other than this policy also applies as primary coverage, then ***we*** will pay the proportion of ***medical expenses*** and funeral expenses payable as primary that ***our*** applicable limit bears to the sum of ***our*** applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary.

(Emphasis in original.)

¶7     The parties filed cross motions for summary judgment. They agreed there were no material issues of disputed fact, and further stipulated to the amount of Winter's "medical expenses," that Winter suffered a "bodily injury," that Winter was "an insured," and that his injury was due to "a motor vehicle accident." State Farm also agreed that health insurance is not included among the exclusion, nonduplication, or "other insurance" provisions of the policy. State Farm's sole argument was that the term "incurred," as used but not defined in the policy, only applied to expenses that the insured either personally paid or was liable to pay at the time he requested payment, and, therefore,

---

[1] This paragraph of the State Farm policy, referencing "other medical payments coverage," is not raised as an exclusion or a defense to the medical payments claimed by Winter, and thus we do not address it further.

4

Winter had not "incurred" any expenses for purposes of his med pay coverage other than the $25.02 which it had paid.

¶8 The District Court granted summary judgment in favor of State Farm, reasoning that "State Farm was not presented with a medical expense that had been incurred, in that Mr. Winters [sic] did not become liable or subject to any medical bills as a result of his injury and has, in fact, been made whole." It further determined that Winter's "reasonable expectations" were met because a "reasonable insured would not expect coverage for a nonexisting debt," citing *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, 343 Mont. 279, 184 P.3d 1021.

## STANDARD OF REVIEW

¶9 We review a district court's grant of summary judgment de novo, using the same M. R. Civ. P. 56 criteria applied by the district court. *Harris v. State*, 2013 MT 16, ¶ 11, 368 Mont. 276, 294 P.3d 382. A moving party is entitled to summary judgment when the party "demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law." *Harris*, ¶ 11. The parties in this case do not raise any genuine issues of material fact, and we determine there are none, leaving only the question of entitlement to judgment as a matter of law. The interpretation of an insurance contract is a question of law. *Babcock v. Farmers Ins. Exch.*, 2000 MT 114, ¶ 5, 299 Mont. 407, 999 P.2d 347. Questions of law are reviewed to determine if the district court's conclusions are correct. *Harris*, ¶ 11.

**DISCUSSION**

¶10    *1. Did the District Court err by granting summary judgment to State Farm after concluding that Winter had not "incurred" any medical expenses?*

¶11    The parties' positions boil down the dispute in this case to the meaning of the term "incurred" as used in Winter's insurance contract with State Farm. The term is not defined by the policy. Winter argues that because there is no exclusion or nonduplication provision in the policy to preclude coverage for medical expenses when a separately purchased health insurance policy has already paid them, the plain language of the policy's med pay coverage requires that his expenses be paid. He disputes State Farm and the District Court's definition of the term "incurred," arguing "[t]he fact that he incurred [the medical expenses] does not change simply because another source was also available to pay those bills on Mr. Winter's behalf." He also argues that the definition of incurred offered by State Farm makes the exclusions and nonduplication provisions in the policy superfluous, because they specifically contemplate payment of the insured's expenses by an alternate source, such as workers' compensation, a separate vehicle insurance policy, or a liable third party.

¶12    State Farm acknowledges that no provision in the policy expressly prevents duplicate payments when health insurance has paid the expenses on the insured's behalf. However, State Farm argues that, in determining the correct meaning of incurred, "the word must be interpreted to give effect to the consistent, non-duplication of coverage objective reflected in the policy as a whole" and to "reflect the non-duplication intent of the [med pay coverage] benefits." State Farm also argues that its definition is the only

6

one that complies with our prior cases, and notes that, like the insured in *Newbury,* Winter has already been made whole for all of his medical expenses. State Farm contends that any further payment under the policy would result in a prohibited windfall to Winter, and it is not reasonable for him to expect to receive duplicate payments for the same expenses.

¶13 Although a general rule of interpretation is to "read the policy as a whole and, if possible, [ ] reconcile its various parts to give each one meaning and effect," we must first consider the terms and words of the contract, which "are to be given their usual meaning and construed using common sense." *Newbury*, ¶ 19. When the parties dispute the meaning of a term in the contract, "we determine whether the term is ambiguous by viewing the policy from the viewpoint of a consumer of average intelligence not trained in the law or insurance business." *Newbury*, ¶ 19. It is not the Court's duty to impose an exclusion from coverage based on an inference taken from an undeclared purpose of the policy. To the contrary, "limiting language must be clear and unambiguous." *Christensen v. Mt. W. Farm Bureau Mut. Ins. Co.*, 2000 MT 378, ¶ 27, 303 Mont. 493, 22 P.3d 624. "It is the rule of construction in Montana that language of limitation or exclusion must be clear and unequivocal; otherwise, the policy will be strictly construed in favor of the insured." *Christensen*, ¶ 27 (citations omitted).

¶14 Winter cites, and the District Court applied, a dictionary definition of "incur" as "to become liable or subject to." *Merriam-Webster's Collegiate Dictionary* 590 (10th ed., Merriam-Webster, Inc. 1998). The parties agree to this basic definition, but disagree

7

about when an injured person becomes "liable or subject to" medical expenses for purposes of the policy. "Liable" is defined as "obligated according to law or equity" or "responsible." *Merriam-Webster's Collegiate Dictionary* 670. State Farm argues that an insured cannot be liable for expenses that are paid on his behalf by a third party and no amount is owed. Winter argues that an injured person becomes liable for the expenses at the time services are rendered regardless of whether a third party will ultimately pay them on his behalf, and therefore the med pay coverage is triggered.

¶15 Though we have not previously addressed this issue, both parties support their respective positions by citing prior cases wherein the term "incurred" was used. State Farm notes that in *Conway v. Benefis Health System*, 2013 MT 73, ¶ 34, 369 Mont. 309, 297 P.3d 1200, we explained that our decision in *Newbury* "ultimately upheld State Farm's refusal to pay more than the medical expenses *actually incurred* because a windfall would result if the plaintiff were to receive additional money under his medical payments coverage in excess of his total medical expenses." (Emphasis added.) Similarly, Winter cites *Diaz v. State*, 2013 MT 331, ¶ 13, 372 Mont. 393, 313 P.3d 124, wherein we explained our holding in *Blue Cross & Blue Shield of Montana v. Montana State Auditor*, 2009 MT 318, 352 Mont. 423, 218 P.3d 475: "In that case, coordination of benefits language in a Blue Cross and Blue Shield policy excluded coverage for any health care costs *incurred* by its insureds if they received or were entitled to receive payment of those costs from a third party's automobile or premises liability policy." (Emphasis added.) However, in neither of these cases was the meaning of "incurred" as

8

used in the policy at issue. The term was simply used to summarize the holding of a prior case. We do not find the cited language from either case to be instructive on the definitional issue here.

¶16    We agree with Winter that an ordinary consumer would consider the term "incurred" to be clear and unambiguous. Under general understanding, a person incurs medical expenses at the time services are rendered. When a patient presents at a hospital or doctor's office, the provider makes clear that the patient is responsible for any and all charges, whether or not insurance or some other third party ultimately pays them. The provider does not agree to hold the patient harmless for the services rendered on his behalf, nor does an insurer assume liability for payment of all medical expenses simply by issuing the policy. Thus, a common sense understanding dictates that a person incurs medical expenses at the time of service because he is responsible for the charges from that moment forward. If a third party, such as an insurer, ultimately pays some or all of those charges, the insurer is merely relieving the person of liability he has already assumed. At no point does the insurer become liable to the provider directly. Rather, if the insurer fails to pay according to the terms of the policy, the insured's remedy is to file an action against the insurer. Meanwhile, the provider may seek payment from the insured, regardless of how meritorious the insured's case is against the insurer. The provider could not pursue collection against the insurer directly without a valid assignment of claim from the insured because no contractual obligation exists between the provider and the insurer for the services.

9

¶17    Other jurisdictions have similarly concluded that a common sense rendering of the term means that an insured incurs medical expenses at the time services are rendered. *See Shanafelt v. Allstate Ins. Co.*, 552 N.W.2d 671, 676 (Mich. App. 1996) ("Obviously, plaintiff became liable for her medical expenses when she accepted medical treatment. The fact that plaintiff had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf, does not alter the fact that she was obligated to pay those expenses."); *Samsel v. Allstate Ins. Co.*, 59 P.3d 281, 286 (Ariz. 2002) (quoting *Hollister v. Govt. Employees Ins. Co.*, 224 N.W.2d 164, 166 (Neb. 1974)) ("'incurred' or 'actually incurred' language does not bar an insured who became liable for expenses from recovery simply because 'of the availability of collateral means of discharging his liability therefor so as to have relieved him of the need to pay the charges personally.'"); *Coconino County v. Fund Adminstrs. Assn. Inc.*, 719 P.2d 693, 696 (Ariz. App. Div. 1 1986) (injured insured "incurred" medical expenses despite the availability of other medical coverage because insured agreed at admittance that he was the ultimate guarantor of all treatment costs); *Am. Indem. Co. v. Olesijuk*, 353 S.W.2d 71, 72 (Tex. App.—San Antonio 1961) (where insured "contracted for [medical] services with private persons and institutions and became liable for the payment of the charges therefor, such charges were incurred by him and [insurer] became liable to him for such expenses so incurred" despite payment of charges by insured's employer).

¶18    Insurance commentators have likewise recognized this principle.   Appleman on

Insurance states:

> *In the ordinary situation, and in the absence of any policy provision to the contrary, it would be a matter of indifference to any insurer how many policies of like type an insured might carry, and duplicate reimbursement would be permissible. . . .*   Instead of expending those funds for premiums [on duplicate insurance], he could put them in a savings account and have them available for use in an emergency.   None could then criticize their availability.

John Alan Appleman & Jean Appleman, *Insurance Law and Practice* vol. 8A, § 4902.50, 267 (West 1981) (emphasis added) (citing *Phoenix Ins. Co. v. Leonard*, 119 So. 2d 217 (Ala. 1960) (holding that insured's attempt to collect for the same injuries under other insurance policies was irrelevant because the policy at issue did not contain a coinsurance or pro rata clause, and that where the insured obtained the money to pay the medical bills before the defendant insurer paid the claim was immaterial)).   *See also Couch on Insurance* vol. 11, § 158:12 (Lee R. Russ & Thomas F. Segalla, eds., 3d ed., Thompson West 1997) (collecting cases).   Thus, under a common sense understanding of the plain language of the policy, Winter "incurred" related medical expenses at the time of service that were subject to payment, without any exclusion or set-off by the policy.

¶19    State Farm argues that this conclusion conflicts with our prior jurisprudence in several ways, starting with the reasonable expectations doctrine.   "The reasonable expectations doctrine provides that the objectively reasonable expectations of insurance purchasers regarding the terms of their policies should be honored notwithstanding the fact that a painstaking study of the policy would have negated those expectations."

*Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 42, 354 Mont. 15, 221 P.3d 666 (quotation omitted). This doctrine was created as a means to protect consumers from confusing or unclear contract language based on the recognition that "'most insurance contracts, rather than being the result of anything resembling equal bargaining between the parties, are truly contracts of adhesion.'" *Giacomelli*, ¶ 42 (quoting *Couch on Insurance* vol. 2, § 22:11, 22-23). The doctrine is not a means of protecting the insurer, who drafted the contract language, from its responsibility to provide coverage pursuant to the contract. Just as "[t]he doctrine of reasonable expectations does not apply to create coverage where the terms of the insurance policy clearly demonstrate an intent to exclude such coverage," *Babcock*, ¶ 18 (quotation omitted); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 208, ¶ 20, 371 Mont. 147, 305 P.3d 861, the doctrine of reasonable expectations cannot create an exclusion from coverage where the terms of the insurance policy do not clearly demonstrate an intention to exclude such coverage. To hold otherwise would be to disregard the requirement that limitations be stated clearly and unequivocally. *See Christensen*, ¶ 27.

¶20 State Farm also argues that Winter has been made whole. The made-whole doctrine was established by this Court in 1977 "to be applied in insurance subrogation cases." *Swanson v. Hartford Ins. Co.*, 2002 MT 81, ¶ 15, 309 Mont. 269, 46 P.3d 584 (citing *Skauge v. Mt. States Tel. and Tel. Co.*, 172 Mont. 521, 565 P.2d 628 (1977)). The doctrine requires "that an insured be 'made whole' before an insurer [can] assert its subrogation rights." *Swanson*, ¶ 15. This doctrine is inapplicable here, where the

12

insurer's obligation to pay the insured according to the plain language of the policy is the issue. We have never extended the made-whole doctrine to a dispute regarding the enforceability of a nonduplication or exclusion provision, and we decline to do so here.[2]

¶21 State Farm argues that our conclusion conflicts with our holdings that prohibited a double recovery for the insureds in *Newbury* and *Conway*. This argument necessarily overlooks the undisputed fact that the State Farm policy contains no double recovery exclusion or limitation, which sets this case apart from the contract provisions at issue in *Newbury* and *Conway*. Although our holdings in those cases barred a double recovery, we have never declared as a general principle that an insured may never recover duplicate payments under separate insurance policies. In fact, the law recognizes that duplicate payments are possible. Section 33-23-203(2), MCA, provides that:

> A motor vehicle liability policy [including med pay coverage pursuant to § 33-23-204(2), MCA] *may* also provide for other reasonable limitations, exclusions, reductions of coverage, or subrogation clauses *that are designed to prevent duplicate payments for the same element of loss* under the motor vehicle liability policy. . . .

(Emphasis added.) This section authorizes insurers to add exclusions, nonduplication provisions, and subrogation clauses in the policy in order to "prevent duplicate payments for the same element of loss under the motor vehicle liability policy." By recognizing

---

[2] The made-whole doctrine could be relevant in the present case to the extent BCBS would seek subrogation of payments it had expended on Winter's behalf from State Farm, or vice versa. No party has raised the issue of subrogation rights as between BCBS and State Farm, and we do not address the same. Likewise, because we reach our conclusion based on the plain language of the contract, we need not address Winter's alternate argument that the made-whole doctrine should be applied to allow recovery of his BCBS premiums.

13

that such limitations *may* be included in a policy, it is implicit that without such limitations duplicate payments are possible.

¶22    Our cases concluding that double recovery would result in a prohibited windfall to the insured have dealt with express exclusions or other limiting language in a policy or agreement.   When the insured challenged the policy language, we were required to determine whether the express limitation was enforceable pursuant to public policy or the doctrine of reasonable expectations.   In *Newbury*, the insured carried two automobile insurance policies with State Farm, each with med pay coverage up to $5,000.   The policies stated that coverage was not available "to the extent workers' compensation benefits are required to be payable." *Newbury*, ¶ 9.   Newbury was injured while on the job in an accident otherwise insured by his med pay coverage.   Workers' compensation paid $17,230.00 toward Newbury's medical expenses, and State Farm paid the remaining $1,175.80. *Newbury*, ¶¶ 8, 10.   Newbury brought suit seeking the full $10,000 of stacked med pay coverage.   He argued that the workers' compensation limitation in the policy was in violation of public policy and therefore unenforceable. *Newbury*, ¶ 11.   We determined that the phrase "required to be payable" was clear and unambiguous, and the express limitation preventing duplicate recovery when medical expenses were paid by workers' compensation "did not defeat coverage and render any coverage State Farm promised to provide illusory." *Newbury*, ¶¶ 20, 27.   We also concluded that the workers' compensation limitation did not violate public policy by violating Newbury's reasonable expectations of coverage because "expectations that are contrary to a clear exclusion

14

from coverage are not objectively reasonable." *Newbury*, ¶ 35. *See also Scheafer v. Safeco Ins. Co. of Ill.*, 2014 MT 73, 374 Mont. 278, 320 P.3d 967 (upholding "other insurance" exclusion and excess clause in med pay coverage against a challenge that the exclusion acted as prohibited *de facto* subrogation); *Infinity Ins. Co. v. Dodson*, 2000 MT 287, 302 Mont. 209, 14 P.3d 487 (where "policy unquestionably provide[d] an absolute cap of $50,000 in the event more than one insured is found liable for an accident," the term "accident" was not ambiguous and the insurer's payment limit of $50,000 where two insureds were liable for one accident did not violate state law requiring a minimum of $50,000 coverage per accident, per vehicle rather than per insured). None of these cases are controlling here because an express limitation does not exist in State Farm's policy and, as we have previously explained, subrogation and the reasonable expectations doctrine are not applicable.

¶23 In *Conway*, the insured was involved in a motor vehicle accident and received treatment at Benefis Hospital. Conway had health care coverage through TRICARE and med pay coverage through his automobile insurance carrier, Kemper. TRICARE had a preferred provider agreement (PPA) with Benefis wherein the provider agreed to accept a defined "reimbursement rate" as the only payment for services and waive the remaining charges. *Conway*, ¶ 6. TRICARE, as a benefits program offered through the government, operates as a secondary payer similar to Medicaid and Medicare. TRICARE paid $662.74 to Benefis in full satisfaction of Conway's total treatment costs of $2,073.65. Six days later, Benefis received payment of $1,866.29 from Kemper, from

which Benefis reimbursed TRICARE's $662.74 payment in full. *Conway*, ¶ 7. Conway filed suit against Benefis seeking to recover the $1,203.55 that Benefis received from Kemper over and above the TRICARE reimbursement rate. *Conway*, ¶ 8. Conway alleged Benefis breached the PPA by accepting payment from Kemper in excess of the TRICARE reimbursement rate. *Conway*, ¶ 33. We concluded that the PPA did not prevent Benefis from accepting a greater amount from the responsible insurer to settle the account because it only applied when payment was made by TRICARE. *Conway*, ¶ 32. We also concluded that this result complied with the doctrine of reasonable expectations because where Conway's treatment costs were paid in full, he received the coverage he reasonably expected—payment of his medical expenses. *Conway*, ¶¶ 34-35.

¶24 In *Harris v. St. Vincent Healthcare*, 2013 MT 207, 371 Mont. 133, 305 P.3d 852, we reached a similar result on a consolidated appeal. Two different plaintiffs had each been injured in separate automobile accidents. Their respective medical expenses were paid directly to the providers by the at-fault tortfeasors' automobile insurers. *St. Vincent Healthcare*, ¶¶ 4-5. Both plaintiffs were also members of a BCBS health plan at the time of their injuries. BCBS had entered into a PPA agreement with the medical providers the plaintiffs had visited whereby the providers agreed to a discounted reimbursement rate for services provided to BCBS insureds. *St. Vincent Healthcare*, ¶ 6. The plaintiffs filed suit alleging that the providers were only entitled to payment up to the maximum PPA reimbursement rate under the BCBS policy even though payment was made by different insurers, and that the difference should be remitted to them personally. *St. Vincent*

16

*Healthcare*, ¶ 7. We relied on our holding in *Conway* to determine that the providers were only bound by the discounted reimbursement rate when BCBS was the insurer paying for the services, and that the providers did not breach any contract in retaining payment in excess of this amount. *St. Vincent Healthcare*, ¶¶ 25-27.

¶25    State Farm points to dicta in *Conway*, where we stated:

> Conway is no more entitled to pocket excess medical payments here than he would be under the circumstances in *Newbury*, or any other situation in which all of his medical expenses are paid by his insurer under its medical payments coverage. . . . [T]he basic premise [is] that medical payments coverage is for the payment of medical expenses only; it does not provide for the payment of additional or excess sums to the insured.

*Conway*, ¶ 35. Viewed in isolation, this statement supports State Farm's argument, but the analysis preceding this conclusion demonstrates its inapplicability here. In both *Conway* and *Newbury* the insureds sought to recover excess sums despite the fact that *the insurance policy clearly did not provide a mechanism for such recovery*. Conway attempted to recover from the medical provider, not the insurer, funds paid on his behalf for services rendered based on a contract to which he was not a party. Newbury sought a double payment by rendering an express exclusion unenforceable. Our conclusion that Conway was not entitled to pocket excess sums relied on our analysis of the reasonable expectations doctrine in *Newbury*, where we concluded that it was not a reasonable expectation for an insured to expect payment of additional sums after his expenses are paid when the insurance policy clearly excludes such payment. *Conway*, ¶¶ 34-35. As noted, the reasonable expectations doctrine is not at issue here. We similarly relied upon this language from *Conway* in *Van Orden v. United Services Automobile Association*,

17

2014 MT 45, ¶ 21, 374 Mont. 62, 318 P.3d 1042, to conclude that, under a made-whole analysis, an insured was not entitled to double recover for property damages when medical coverage was insufficient. Like *Conway* and *Newbury*, *Van Orden* is distinguishable from the present case because the insured did not seek to collect under the plain terms of the policy. Rather, Van Orden sought to obtain duplicate payment of property damages from two separate insurance policies because the medical payments coverage was insufficient to cover all his medical expenses. *Van Orden*, ¶¶ 6-9. There, we declined to extend the made-whole doctrine to allow an insured to recover twice for one type of damages in order to cover a separate type of loss when the policies clearly provided for separate coverage limits and the insured could not demonstrate any right to recover medical expenses under property insurance coverage. *Van Orden*, ¶ 21.

¶26 While we declined to approve the requested duplicate payment to the insureds as a "windfall" in the preceding cases, we did not hold that a duplicate recovery was prohibited in all cases, and thereby eschew the law of contract. "The fundamental tenet of modern contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws." *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250; *see also Gibbons v. Huntsinger*, 105 Mont. 562, 573, 74 P.2d 443, 449 (1937) ("Freedom of contract is one of the fundamental liberties of the individual . . . ."). We find no basis in contract law, insurance law, or public policy for a blanket rule prohibiting duplicate

18

insurance coverage when the parties have not expressly agreed to such a limitation and the insured has paid for the coverage.

¶27 Other jurisdictions have similarly determined that the prohibition on double recovery does not apply in situations where an insured purchases separate policies, paying multiple premiums, for the same coverage (provided there is no express limitation on such recovery in the policies). The Idaho Supreme Court noted that "double recovery" is ordinarily used in the context of tort actions to prevent a plaintiff from satisfying a single judgment multiple times against different defendants. *Linn v. N. Idaho Dist. Med. Serv. Bureau*, 638 P.2d 876, 884 (Idaho 1981). Such a restriction does not apply in the context of contractual relationships because payment on each policy is "made pursuant to a contractual obligation incurred for a premium paid." *Linn*, 638 P.2d at 884. The court in *Linn* also cited several other jurisdictions for the proposition that "there is no legal or policy reason why an insured should not be allowed to contract with insurance companies for double or multiple medical coverage." *Linn*, 638 P.2d at 884. One such jurisdiction noted:

> there is no public policy which dictates a single insurance recovery for medical payments. A person may bargain with as many insurance companies as he pleases for the payment of medical expenses incurred by him. This does not result in any unfairness to the multiple insurers. Each insurer receives a premium which we may assume is computed upon the basis that the insurer alone will be obligated to pay the medical expenses of the insured and not simply the excess or a pro rata proportion of the expense with other insurers. As we have already noted, if it were the intention to so limit liability, it is reasonable to assume that the insurer would have included an excess or pro rata clause in the section of its policy on medical expense coverage.

19

*Heis v. Allstate Ins. Co.*, 436 P.2d 550, 552 (Or. 1968).

¶28 We can only interpret the policy as it is written. We are not at liberty to add an exclusion to coverage based on the insurer's general desire to preclude duplicative payments to an insured.

> Where plaintiff has an uncoordinated no-fault insurance contract with defendant that provides no limitation on plaintiff's right to recover from defendant in the context of duplicate insurance coverage [the defendant does not have] the right to refuse payment to plaintiff where plaintiff's injuries fall within the coverage of her policy with defendant.

*Shanafelt*, 552 N.W.2d at 678. Based on the plain language of the policy, using the common sense meaning of the term "incurred," there is no limitation that prevents Winter from receiving a duplicate payment for medical expenses under separately purchased, uncoordinated insurance policies.

¶29 *2. If the District Court erred by not granting summary judgment to Winter, is Winter entitled to costs, interest, and attorney fees?*

¶30 As the District Court denied Winter's motion for summary judgment, it also denied his request for costs, interest, and attorney fees. On appeal, Winter asks us, in the event he prevails on his appeal, to award costs, interest, and attorney fees. State Farm argues that should we find in favor of Winter, we should remand this question to the District Court, though it cites no authority for why remand would be necessary other than the basic argument that "the District Court did not first rule upon those issues."

¶31 Montana follows the American Rule regarding attorney fees where each party is ordinarily required to bear his or her own expenses absent a contractual or statutory provision to the contrary. However, there are several equitable exceptions to this rule.

20

*Mt. W. Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 14, 315 Mont. 231, 69 P.3d 652. An equitable award of attorney fees may be discretionary, requiring a lower court to first rule upon the issue, such as an award under § 27-8-313, MCA, which allows an award of fees when the court deems it "necessary or proper." *Brewer*, ¶ 17. However, Winter does not seek a discretionary award of attorney fees. Rather, he bases his claim on the insurance exception to the American Rule. In *Brewer*, ¶ 36, we held that "an insured is entitled to recover attorney fees, pursuant to the insurance exception to the American Rule, when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract." Such an award is not discretionary, and as such does not require a lower court to consider the issue in the first instance. We hold that Winter is entitled to attorney fees as a matter of law under the insurance exception because he was forced to pursue legal action in order to obtain the full benefit of the insurance contract.

¶32 An award of prejudgment interest is likewise not discretionary. A prevailing party is entitled to prejudgment interest pursuant to § 27-1-211, MCA, if (1) an underlying monetary obligation exists, (2) the amount of recovery is capable of being made certain by calculation, and (3) the right to recover the obligation vests on a particular day. *New Hope Lutheran Ministry v. Faith Lutheran Church*, 2014 MT 69, ¶ 70, 374 Mont. 229, __ P.3d __. There is no dispute over the amount of medical expenses Winter requested under his med pay coverage, and the underlying obligation to pay the claim arose upon submission of the claim. Further, entitlement to post-judgment interest is a statutory right

21

pursuant to § 25-9-205, MCA. Winter is therefore entitled, as a matter of law, to pre- and post-judgment interest.

¶33    Finally, Winter, as the prevailing party, is also entitled to costs pursuant to M. R. Civ. P. 54(d) and § 25-10-101(3), MCA. Upon remand, the District Court will consider the correct amount of fees, costs, and interest to which Winter is entitled.

¶34    We note that Winter's Complaint requested punitive damages based on a violation of the UTPA. However, he does not present this request in his briefing to this Court or request remand to the District Court for determination of whether such an award is appropriate. We therefore view his request for punitive damages as waived.

¶35    Reversed and remanded for further proceedings consistent with this opinion.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT