Justice Ingrid Gustafson delivered the Opinion of the Court.
**86 ¶ 1 Plaintiff independent power producer Boulder Hydro LP (Boulder) appeals from an order granting summary judgment to NorthWestern Corporation d/b/a NorthWestern Energy (NWE) in the First Judicial District Court, Lewis and Clark County. We affirm.
¶ 2 The issue on appeal is:
Whether the District Court erred in granting summary judgment to NWE?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 This is a contract pricing dispute between NWE and Boulder. The Public Service Commission (PSC) regulates Montanan energy sales. The PSC issues orders controlling how utility companies like NWE and qualifying facilities (QFs) like Boulder agree to pricing and term length in their Power Purchase Agreements (PPAs). The PSC sets pricing in PPAs by giving NWE a set list of options from which the QFs may choose, measuring increments of energy in megawatt hours (MWh), e.g. , Order 6501f (PSC docket D2003.7.86). NWE provides QFs these PSC-approved options in Exhibit A to the PPA.
¶ 4 There have been several PPAs between Boulder and NWE (or its predecessor Montana Power): one from 1985-2003, one from 2003-2007, and the currently litigated PPA dated July 1, 2007. The 2007 PPA offered by NWE to Boulder included three pricing options set by the PSC in Exhibit A:
1. Rate Option 1 is a fixed payment rate of $49.90 per MWh and allows a term from 7 to 15 years ....
2. Rate Option 2 consists of two sub-options: 2(a) and 2(b).
a. Option 2(a) is designed to reflect NorthWestern's actual hourly incremental market purchases. .... This hourly rate per MWh will be the payment rate. ...
b. Option 2(b) is based on market price indices of which the Mid-C Dow Jones published index of hourly average prices for each hour is the index that will be used for the rate in $ per MWh to pay Seller for each hour. If Rate Option 2(b) is selected, please indicate on the following line, the number of years from 1 to 20 for the Operation Period of this contract.
The "Mid-C" is an energy trading hub on the Columbia River used as a basis for energy sales across the Northwest. Per instructions in the PPA, Boulder initialed next to Option 2(b) and typed "15 years" for the length of the contract. While 2(b) specifically references the Mid-C Dow Jones index, the S & P Global Platts, Intercontinental Exchange (ICE), and Powerdex indices provide similar information and are also used in **87 energy contracts (indeed, in 2010 the PSC modified Exhibit A to specify ICE rather than Dow Jones). The 2007 PPA also included a provision *252 by which the parties could amend the PPA's exhibits:
Article 20: Exhibits. This Agreement includes Exhibits A and B which are attached, and incorporated by reference herein. Exhibits may from time-to-time be changed upon mutual agreement of the Parties, which agreement shall not unreasonably be withheld.
¶ 5 From the effective date of the PPA, July 1, 2007, through September 13, 2013, Option 2(b) averaged significantly lower than Option 1's $49.90/MWh during the same time. In 2012 Boulder requested NWE let it choose again amongst the options on its Exhibit A. NWE declined this request. In August 2013, S & P Dow Jones Client Services indicated Dow Jones would no longer be publishing Mid-C Index prices as of September 13, 2013, which meant NWE needed to substitute a different reporting service for the Dow in Exhibit A. In an apparent effort to change Exhibit A pursuant to Article 20 of the PPA, NWE suggested the ICE or Powerdex index replace the Dow Jones. Boulder's owner testified he turned down the new index offer because he still wanted the fixed rate contract. NWE and Boulder talked further but were unable to reach settlement of the issue.
¶ 6 In May 2016 Boulder filed this action. Boulder argues the material term of the PPA pricing was Boulder's ability to choose among the options for payment in Exhibit A, and that therefore when the Dow ceased publication of the Mid-C rates in 2013 it should have had the right to choose again from the 2007 or 2013 Exhibit A price options. NWE argues the material term of the PPA was Boulder's ability to choose a market rate (versus a set rate) and duration from among the payment options in Exhibit A, and that when the Dow ceased publication of the Mid-C rates, it should have been replaced with the ICE index or other similar market rate reporting service.
¶ 7 The parties fully briefed cross-motions for summary judgment on the issues of law. In June 2017, the District Court entered an order granting summary judgment for NWE and held Boulder to its 15-year, market rate PPA, concluding the Dow should be replaced with a reasonable market rate reporting substitute. The court found the sole remaining fact issue was to determine whether the ICE index could reasonably replace the Dow. Following bench trial on this issue, the District Court concluded the ICE index was a reasonable replacement to the Dow Mid-C and permitted NWE to substitute the ICE index for the Dow Jones in the 2007 PPA with Boulder. Neither party appeals this ruling. Boulder appeals only the order granting summary **88 judgment.
STANDARD OF REVIEW
¶ 8 We review a district court's grant of summary judgment de novo. A moving party is entitled to summary judgment when the party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. Here there are no disputes of fact; only the interpretation of a contract is presented for review. The interpretation of a contract is a question of law we review to determine if the district court's conclusions are correct. Winter v. State Farm Mut. Auto. Ins. Co. , 2014 MT 168, ¶ 9, 375 Mont. 351, 328 P.3d 665.
DISCUSSION
¶ 9 This case is a contract dispute over how to move forward after the Dow Jones Mid-C price index ceased publication in September 2013 and could no longer serve as the price setting reporting term in the parties' PPA. Boulder argues closure of the Dow Jones Mid-C index in September 2013 removes the material, bargained-for term in Option 2(b) of the Exhibit A price options, and without that specific price index Boulder must be allowed to rescind the 2007 PPA and start anew by selecting another option under the 2007 or 2013 Exhibit A options. NWE argues the material bargained-for terms of the PPA were Boulder's ability to choose a duration and between market rate and set rate, so when the Dow ceased publication of the Mid-C rates, the term should be replaced with the ICE index or other similar marker rate reporting service. We agree with NWE.
*253 ¶ 10 Boulder and NWE also make arguments regarding use of the UCC which the District Court addressed in its order. As we resolve this appeal on other grounds, we find it unnecessary to address any UCC matters.
¶ 11 "Where a contract provides an exclusive method by which its consideration is to be ascertained, which method appears possible on its face but in fact is or becomes impossible of execution, such provision only is void." Section 28-2-814(2), MCA.
¶ 12 Boulder's history of asking for replacement of its market rate choice before the Dow/ICE issue arose belies its argument that Dow was the material, bargained for term of the PPA. Boulder chose both the option it wanted under Exhibit A to the PPA and the length of time it wanted that option. In Boulder's chosen Option 2(b), the Dow was the publication used to set pricing. From the time the contract was entered until September 2013, the Dow Mid-C index not only appeared **89 possible on its face but was utilized by NWE to measure payment to Boulder as contemplated in the PPA. When the Dow ceased publishing the Mid-C index in September 2013, NWE could no longer use it to calculate market rate payments to Boulder and that term became impossible to execute. Thus, the "Mid-C Dow Jones published index" provision became void but did not invalidate the PPA between NWE and Boulder, e.g. , Dumont v. Tucker , 250 Mont. 417, 420, 822 P.2d 96, 98 (1991) (utilizing the "blue pencil" approach, one void term does not void a whole contract clause). The District Court's interpretation of the PPA between Boulder and NWE was correct.
¶ 13 Neither party appealed the District Court's decision after bench trial that NWE could reasonably replace the Dow index with ICE. Boulder agreed in Article 20 of the PPA that Exhibit A may be "changed upon mutual agreement of the Parties, which agreement shall not unreasonably be withheld." Boulder's failure to agree to substitute the ICE index for the void Dow was unreasonable. We affirm the District Court's order granting summary judgment to NWE as the District Court correctly interpreted the PPA between NWE and Boulder. Boulder unreasonably withheld its agreement to replace the Dow Jones Mid-C reporting index with the ICE index when the Dow ceased publication in September 2013.
CONCLUSION
¶ 14 The District Court correctly interpreted the PPA between NWE and Boulder, appropriately granted NWE summary judgment, and properly found that a reasonable price reporting index should replace the Dow Mid-C index under Exhibit A to the parties' PPA.
¶ 15 Affirmed.
We concur:
MIKE McGRATH, C.J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.
JIM RICE, J.